# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

MICHAEL LEE WILSON,               )
                                           )
                **Petitioner,**      )
                                             )
vs.                               )     **Case No. 00-CV-147-CVE-FHM**
                                             )
MARTY SIRMONS,[1] Warden,         )
Oklahoma State Penitentiary,      )
                                             )
                **Respondent.**      )

## OPINION AND ORDER

This matter comes before the Court on a 28 U.S.C. § 2254 petition for writ of habeas corpus
(Dkt. #16) filed by Oklahoma death row inmate Michael Lee Wilson. Petitioner, who appears
through counsel, challenges his conviction and sentencing in Tulsa County District Court Case No.
CF-95-1024. Respondent filed a response to the petition denying its allegations (Dkt. #18), and
Petitioner filed a reply (Dkt. #20). For the reasons discussed below, the Court finds the petition
should be denied.

The Court has reviewed:[2] (1) the petition for writ of habeas corpus, response to the petition,
and reply to the response; (2) partial transcript of preliminary hearing held on May 22, 1995, and
August 16, 1995 (two volumes); (3) transcripts of the motion hearing and arraignment held on

---

[1] The Court is aware that Marty Sirmons is the current warden of Oklahoma State
Penitentiary. Pursuant to Rule 2(a), Rules Governing Section 2254 Cases and
Rule 25(d)(1), Federal Rules of Civil Procedure, Warden Sirmons is hereby
substituted as the respondent in this case. The Court Clerk shall be directed to note
such substitution on the record.

[2] The trial court's original record shall be cited as (O.R. Vol. __ at __). Transcripts from
various hearings shall be cited as ( Trans. ____ Hr'g, mo./day/year at __). The trial transcript
shall be cited as (Tr. Trans. mo./day/year at __).

February 28, 1996; (4) transcript of the hearing held on September 16, 1996, regarding severance and joint trials; (5) transcripts of the motion hearing held on October 30, 1996, motion hearing held on January 27, 1997, motion hearing held on January 30, 1997, motion hearing held on February 3, 1997, *voir dire* proceedings held on February 3-5, 1997, for selection of Wilson jury only (three volumes), and motion hearing held on February 10, 1997; (6) transcript of the first stage of jury trial proceedings, held February 11-14, 1997 (five volumes); (7) transcript of the second stage of the jury trial proceedings held on February 18-20, 1997 (four volumes); (8) all documents and exhibits (photographs of certain items of physical evidence submitted in lieu of actual items) admitted in jury trial proceedings, including one audio tape of co-defendant Darwin Brown's statement to police, one audio tape of Petitioner's statement to police, and three video tape exhibits; (9) transcript of the sentencing proceedings held on April 9, 1997; (10) Original Record in Tulsa County Case No. CF-95-1024, Volumes I, II, and III; and (11) all other records before the Oklahoma Court of Criminal Appeals which were transmitted to this Court and certified by the parties.

## BACKGROUND

### I.      Factual History

In the early morning hours of February 26, 1995, Richard K. Yost was brutally murdered with a baseball bat while on duty as a clerk at a QuikTrip convenience store. Petitioner and three co-defendants were charged and convicted of Mr. Yost's murder. Pursuant to 28 U.S.C. § 2254(e)(1), the historical facts as found by the state court are presumed correct. Following review of the record, trial transcripts, and the admitted exhibits, this Court finds that the factual summary by the Oklahoma Court of Criminal Appeals is adequate and accurate. The Court therefore adopts the

2

following summary as its own.

Michael Wilson and Richard Yost were employees at the QuikTrip convenience store located at 215 North Garnett Road in Tulsa, Oklahoma. Wilson and his friends planned to rob the convenience store at least two weeks before this crime actually occurred. The plan commenced on February 25, 1995. Wilson had completed his shift at 11:00 p.m. with Yost beginning his shift at that time. Wilson and his three friends came into the store during the early morning hours of February 26 and waited for the most opportune time to accost Yost. The QuikTrip surveillance camera captured the events as they unfolded. The video of the events is quite telling.

Yost was cleaning the windows on the coolers with Wilson and the codefendants surrounding him. As Yost was walking near a passage way to the back room, all four defendants attacked him and dragged him to the back room. One of the defendants, identified as Billy Alverson, came back out and picked up some items that were knocked from the shelves and kept watch for customers. A few moments later, Alverson and Richard Harjo walked out the front door of the store. While they were going out, Yost was yelling and screaming for help, possibly thinking that a customer had entered the store. Alverson and Harjo re-entered the store with Harjo carrying a black aluminum baseball bat. He carried the bat to where Yost had been taken. The surveillance camera picked up the sounds of the bat striking Yost. Circumstantial evidence showed that the baseball bat struck the handcuffs on Yost's wrists which Yost was holding above his head to ward off the blows. As the blows were being struck, Wilson walked from the back room, checked his hands, put on a QuikTrip jacket, got behind the counter and tried to move the safe. While Wilson was behind the counter, several customers came in. Wilson greeted them with a friendly greeting, sold them merchandise, then said "thank you, come again" or "have a nice day."

All this time Wilson continued to try and pull the safe from underneath the counter. He took money from the cash drawer and pulled money out of the currency change machine. At some point after this, Wilson left the counter area and took the video from [the] surveillance camera recorder. The defendants then loaded the safes into Wilson's car using a dolly from QuikTrip.

Yost's body was discovered by Larry Wiseman, a customer, at about 6:00 a.m. Yost was laying on the floor in a pool of blood, milk and beer. Yost's ankles were taped together with duct tape. One handcuff was found near Yost's body. The other cuff was missing from the scene. Detectives learned that Wilson was at the store between the hours of 4:00 a.m. and 6:00 a.m.

Wilson failed to show up for work at the scheduled time of 3:00 p.m. on the same day. Officer Allen set up surveillance on Wilson's house and at about 4:00 p.m. he spotted Wilson get into a gray vehicle. The vehicle was stopped. Wilson was

3

taken into custody. Also arrested were the other occupants in the vehicle: codefendants Alverson, Harjo, and Darwin Brown. Large sums of money were recovered from all of the defendants except Wilson.

Wilson was questioned by Detective Folks. He told Folks that they planned on robbing the QuikTrip and that he knew Yost would be killed. He said that they had been talking about the robbery for about two weeks. The plan was for him to assume the role of sales clerk once Yost was "taken care of."

Officers searched Alverson's place of abode where they discovered the drop safe, the dolly, QuikTrip glass cleaner, money tubes and the store surveillance video tape. A search was conducted of Wilson's house but nothing of value was discovered. The next day Wilson's mother called Officer Makinson to come to her house. Once there, the detectives found several items of evidence on the front porch, including the baseball bat, a bloody QuikTrip jacket with Yost's name on it, Wilson's Nike jacket matching the one worn in the store video and the other cuff of the set of handcuffs.

Wilson v. Oklahoma, 983 P.2d 448, 455 (Okla. Crim. App. 1999). Any additional facts[3] necessary for a determination of Petitioner's claims will be set forth in detail throughout this opinion.

## II.    Procedural History

Petitioner was convicted by a jury in the District Court of Tulsa County, State of Oklahoma, Case No. CF-95-1024, of First Degree Murder and Robbery with a Dangerous Weapon. His trial was held jointly with co-defendant Darwin Brown's trial, in front of separate juries. Petitioner was represented at trial by attorneys Joe P. Robertson and Kent R. Hudson.

Jury selection and *voir dire* were conducted on February 3-5, 1997. The guilt phase of Petitioner's trial began on February 11, 1997, and concluded on February 14, 1997, with the announcement of the jury's verdict. The capital sentencing phase began on February 18, 1997, and concluded on February 20, 1997, with the imposition of a sentence of death for the first degree

---

[3] The Court also adopts other specific factual summaries of the Oklahoma Court of Criminal Appeals recited throughout this opinion. 28 U.S.C. § 2254(e)(1).

murder count and life in prison for robbery with a dangerous weapon. The jury found the existence of three aggravating circumstances: (1) the murder was especially heinous, atrocious or cruel; (2) the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution; and (3) the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. Petitioner was formally sentenced by the trial judge on April 9, 1997.

Petitioner appealed his convictions and sentences to the Oklahoma Court of Criminal Appeals ("OCCA") in Case No. F-97-491. The OCCA affirmed Petitioner's first degree murder conviction and death sentence in a published decision dated December 31, 1998. The judgment and sentence for robbery with a dangerous weapon was reversed and remanded to the district court for dismissal. The OCCA denied a rehearing on February 22, 1999. Wilson, 983 P.2d at 448. Petitioner's subsequent petition for writ of certiorari to the United States Supreme Court was denied on October 4, 1999. See Wilson v. Oklahoma, 528 U.S. 904 (1999).

Petitioner sought post-conviction relief from the Oklahoma Court of Criminal Appeals in Case No. PC-98-1250, but all requested relief was denied in an unpublished opinion dated November 15, 1999.

On February 16, 2000, Petitioner initiated the instant habeas corpus proceeding, seeking relief on the following grounds: (1) unauthorized use of dual jury procedure; (2)warrantless arrest without probable cause; (3) failure to conduct Daubert hearing and improper admission of DNA evidence; (4) improper admission of evidence in violation of Oklahoma Discovery Code; (5) improper admission of evidence without adequate proof of chain of custody; (6) failure to instruct the jury on second degree murder; (7) improper admission of Petitioner's statement to police; (8)

improper admission of prejudicial hearsay testimony; (9) insufficient evidence to support the "heinous, atrocious or cruel" ("HAC") aggravating circumstance; (10) improper admission of highly prejudicial evidence; (11) prosecutorial misconduct; (12) improper conduct by trial court in *voir dire*; (13) improper use of victim impact evidence; (14) ineffective assistance of counsel; (15) unconstitutionality of HAC aggravating circumstance; (16) improper admission of evidence to support the continuing threat aggravating circumstance; (17) unconstitutionality of continuing threat aggravating circumstance; (18) improper instructions to the jury regarding mitigation; (19) cumulative error; (20) dual jury procedure violated due process rights; and (21) Oklahoma's clemency scheme violates due process. Petitioner also requested an evidentiary hearing to support his claims.

## GENERAL CONSIDERATIONS

### I.      Exhaustion

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b) and (c).  See Rose v. Lundy, 455 U.S. 509, 510 (1982).  The Court finds that Petitioner has exhausted state remedies by presenting his claims to the OCCA in his direct appeal and post-conviction proceedings.

### II.     Procedural Bar

The Supreme Court has also considered the effect of state procedural default on federal habeas review, giving strong deference to the important interests served by state procedural rules. See, e.g., Francis v. Henderson, 425 U.S. 536 (1976). Habeas relief may be denied if a state disposed of an issue on an adequate and independent state procedural ground.  Coleman v. Thompson, 501 U.S. 722, 750 (1991). See also Romero v. Tansy, 46 F.3d 1024, 1028 (10th Cir. 1995); Brecheen

v. Reynolds, 41 F.3d 1343, 1353 (10th Cir. 1994).

A state court's finding of procedural default is deemed "independent" if it is separate and distinct from federal law. Ake v. Oklahoma, 470 U.S. 68, 75 (1985); Duvall v. Reynolds, 139 F.3d 768 (10th Cir. 1998). If the state court finding is applied "evenhandedly to all similar claims," it will

be considered "adequate." Maes v. Thomas, 46 F.3d 979, 986 (10th Cir. 1995) (citing Hathorn v. Lovorn, 457 U.S. 255, 263 (1982)).

To overcome a procedural default, a habeas petitioner must demonstrate either: (1) good cause for failure to follow the rule of procedure and actual resulting prejudice; or (2) that a fundamental miscarriage of justice would occur if the merits of the claims were not addressed in the federal habeas proceeding. Coleman, 501 U.S. at 749-50; Wainwright v. Sykes, 433 U.S. 72 (1977).

## III.   Standard of Review - AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA" or "the Act") specifically delineates the circumstances under which a federal court may grant habeas relief. Title 28, Section 2254 (d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
>> (1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d), this Court may grant a writ of habeas corpus only if the state court reached a

conclusion opposite to that reached by the Supreme Court on a question of law, decided the case differently than the Supreme Court has decided a case with a materially indistinguishable set of facts,

or unreasonably applied the governing legal principle to the facts of Petitioner's case. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. It is not necessary, however that the state court cite to controlling Supreme Court precedent, so long as neither the reasoning nor the result of the state court decision contradicts Supreme Court law. Early v. Packer, 537 U.S. 3, 8 (2002).

Petitioner's habeas proceedings in the instant matter commenced well after the effective date of AEDPA. Although the crime for which Petitioner was convicted predates the law's enactment, the provisions of the Act govern pursuant to Lindh v. Murphy, 521 U.S. 320 (1997). Therefore, to the extent Petitioner's claims are cognizable in a federal habeas corpus proceeding, those claims shall be reviewed pursuant to § 2254(d).

## IV.   Claims relating to violations of Oklahoma State Constitution are not cognizable on federal habeas corpus review

Mixed in with Petitioner's arguments are various statements that his rights have been violated under the constitution of the State of Oklahoma. It is well established that it is not the role of a federal habeas corpus court to correct errors of state law. Estelle v. McGuire, 502 U.S. 62 (1991). This Court will address only the federal constitutional issues involved in Petitioner's case. "Alternative state claims, whether grounded in state statutes or the State Constitution, are not cognizable under 28 U.S.C. § 2254(a)." Davis v. Reynolds, 890 F.2d 1105, 1109 n.3 (10th Cir. 1989)

(citing Estes v. Texas, 381 U.S. 532, 588 (1965)).  To the extent Petitioner argues that his rights under the constitution of the State of Oklahoma have been violated, such claims are not cognizable in federal habeas corpus.  Accordingly, the Court concludes that habeas corpus relief is not available insofar as Petitioner claims his rights under the state constitution have been violated.

**PETITIONER'S CLAIMS FOR RELIEF**

**I.      Dual juries[4] (Claims 1 and 20)**

During Petitioner's trial, dual juries were empaneled to try Petitioner and his co-defendant, Darwin Brown.[5] As noted by Petitioner, attorneys for all four co-defendants vigorously argued against the use of dual juries. See Dkt. # 16 at 40; Trans. Mot. Hr'g, 9/16/96. Petitioner seeks habeas corpus relief on the ground that the use of dual juries resulted in a violation of his Sixth, Eighth and Fourteenth Amendment rights.

In his first claim, Petitioner alleges that the trial court's decision to use dual juries was not authorized under state law, resulting in a loss of his liberty interests entitled to due process protections. He also claims that the dual jury process had a chilling effect on cross-examination by his trial counsel, created a conflict of interest for his attorney, deprived him of an impartial jury, resulted in the admission of inadmissible evidence, and constituted structural error. Respondent responds that the utilization of dual juries did not violate Oklahoma law and Petitioner was not prejudiced by the dual jury process for any of the reasons enumerated by him. This issue was

---

[4] The term "dual juries" in this case refers to the procedure of holding simultaneous trials of severed co-defendants before separate juries in the same courtroom.

[5] Co-defendants Billy Don Alverson and Richard Harjo were also tried simultaneously before dual juries. Their trials were scheduled to begin approximately two and one-half months months after Petitioner's trial. See O.R. Vol. II at 238 (Amended Trial Schedule). Each of the four defendants, Wilson, Brown, Alverson and Harjo, had a separate jury.

rejected by the OCCA on direct appeal.

In his twentieth claim for relief Petitioner asserts that his due process rights were violated because the OCCA exceeded its authority when it held that the dual jury procedure was authorized under Oklahoma law. This claim presents the dual jury issue in a slightly different posture by challenging the jurisdiction of the OCCA to regulate trial procedure. The OCCA denied this request for relief in Petitioner's post-conviction proceedings on the grounds of *res judicata*. See "Opinion Denying Post-Conviction Relief" in Oklahoma Court of Criminal Appeals, Case No. PCD-98-1250. Respondent responds that the OCCA's decision was a matter of state law and is not cognizable in this habeas corpus proceeding.

*A. Authorization under Oklahoma law*

Petitioner argues that the trial court's use of dual juries was not allowed under Oklahoma law because Oklahoma has "not enacted any provisions, constitutional or statutory, authorizing such a procedure." See Dkt. # 16 at 28. Rejecting this claim on direct appeal, the OCCA relied on its previous ruling[6] that "the trial court has the discretion to implement a dual jury procedure because Oklahoma law does not prohibit such a procedure." Wilson, 983 P.2d at 456. Petitioner has failed to convince this Court that the OCCA's decision was contrary to, or an unreasonable application of, Supreme Court law.

Citing Hicks v. Oklahoma, 447 U.S. 343, 346 (1980), and Vitek v. Jones, 445 U.S. 480, 488 (1980), Petitioner asserts a violation of his due process liberty interest because his conviction and

---

[6] Petitioner's co-defendants filed petitions for extraordinary relief prior to commencement of trial asking the OCCA to prohibit the trial court from using a dual jury procedure. The OCCA denied the petitions. See Wilson, 983 P.2d at 456, n.2. Petitioner did not file such a petition, but raised the issue on direct appeal.

10

sentence were not determined according to the procedures established by Oklahoma law. He maintains that his right to a severed trial was "granted [but] never happened." (Dkt. # 16 at 29). This constitutional attack on the authority of Oklahoma courts to utilize dual juries must also fail. As noted above, the OCCA found that dual juries are authorized under Oklahoma law. Further, this Court concludes that the dual jury procedure utilized at the trials of Petitioner and his co-defendant Brown constituted a form of severance. See, e.g., State v. Padilla, 964 P.2d 829, 832 (N.M. Ct. App. 1998); State v. Avery, 571 N.W.2d 907 (Wis. Ct. App. 1997). Petitioner was afforded a separate jury and the same protections during trial that he would have received if he would have been tried alone. Accordingly, the trial court's use of the dual jury procedure did not implicate a violation of a liberty interest that is protected by the Fourteenth Amendment. Cf. Vitek v. Jones, 445 U.S. at 488. Petitioner has not been deprived of his due process rights because the trial court empaneled dual juries.

Without exception, federal courts that have considered challenges to the use of dual juries have concluded that the procedure is not *per se* violative of constitutional protections.  See, e.g., Lambright v. Stewart, 191 F.3d 1181, 1186 (9th Cir. 1999) (finding no violation of due process or any other trial right in the use of dual juries in a capital case); Smith v. DeRobertis, 758 F.2d 1151 (7th Cir. 1985), cert. denied, 474 U.S. 838 (1985) (holding that the use of dual juries is not a *per se* violation of due process and that a criminal defendant must show some specific, undue prejudice to be entitled to relief); Padilla v. Dorsey, 221 F.3d 1352, 2000 WL 1089502 (10th Cir. 2000) (unpublished table decision) (denying a certificate of appealability and finding that the habeas petitioner had failed to make a substantial showing of the denial of a constitutional right on his claims, including his claim that he was prejudiced as a result of dual juries in a single trial), cert.

denied, 531 U.S. 1116 (2001); United States v. Lewis, 716 F.2d 16, 19 (D.C. Cir. 1983); United States v. Hayes, 676 F.2d 1359, 1366 (11th Cir. 1982).   Furthermore, the partial or total severance of co-defendants' trials lies within the discretion of the trial court. See Fowler v. Ward, 200 F.3d 1302, 1308 (10th Cir. 2000), *overruling on other grounds recognized by* Moore v. Marr, 254 F.3d 1235, 1239 (10th Cir. 2001). The trial court did not abuse its discretion in this case by empaneling dual juries, and the OCCA's decision that the procedure was authorized under Oklahoma law was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1). Habeas relief is denied on this issue.

In his twentieth claim for relief Petitioner expands on his argument that the dual jury process is unauthorized under Oklahoma law by arguing that the Oklahoma Court of Criminal Appeals had no authority to approve the process because the power to regulate trial procedure lies with the state legislature. This issue was first raised by Petitioner in his post-conviction proceedings. The OCCA determined that the claim was barred by the principles of *res judicata*. See "Opinion Denying Post-Conviction Relief" in OCCA Case No. PCD-98-1250. Petitioner asserts that the OCCA did not have jurisdiction to regulate trial procedure and he cites various Oklahoma statutes and Oklahoma case law in support of this argument (Dkt. # 16 at 168-70).

Petitioner's challenge to the OCCA's interpretation of state law is not cognizable under § 2254 and should be denied. See Tyrell v. Crouse, 422 F.2d 852, 853 (10th Cir. 1970); see also Poe v. Caspari, 39 F.3d 204, 207 (8th Cir. 1994) (stating that "[j]urisdiction is no exception to the general rule that federal courts will not engage in collateral review of state court decisions based on state law.") The "only injury that will suffice to support a petition for habeas corpus relief is an injury to a petitioner's federally protected right; state law injuries cannot and do not suffice." Harvey

v. Shillinger, 76 F.3d 1528, 1534 (10th Cir. 1996) (citing Pulley v. Harris, 465 U.S. 37, 41 (1984)). This Court is bound by the OCCA's interpretation of state law unless it violates federal law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  It is not the province of this habeas court to reexamine state court determinations on state law questions because habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. Id. at 67; 28 U.S.C. § 2241. The OCCA specifically found that the use of the dual jury system in Oklahoma is constitutional "absent a showing of specific prejudice." Wilson, 983 P.2d at 456. Petitioner has not demonstrated how the OCCA's interpretation of state law violated federal law. Accordingly, Petitioner is not entitled to habeas relief on this portion of his twentieth claim.

### B. Claims of prejudice caused by dual jury procedure

Having found that the dual jury procedure used at Petitioner's trial was not a *per se* violation of Petitioner's constitutional rights, the Court now turns to Petitioner's various claims that the dual jury process prejudiced the presentation of his case. These claims were all presented to the OCCA on direct appeal and rejected. Respondent contends that Petitioner has failed to show any prejudice and has not demonstrated how the OCCA's determination involved an unreasonable application of clearly established Supreme Court law, or resulted in a decision that was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

1.    "Chilling" effect

Petitioner first asserts that the implementation of the dual jury mechanism "chills the right of cross-examination." (Dkt. #16 at 31). The OCCA found that this claim of prejudice did not warrant relief.

> Wilson first claims that the dual jury system has a chilling effect on effective
> cross-examination. He claims that this problem was magnified when the trial court

13

instructed defense counsel that it is the responsibility of attorneys for the State and defense to advise the Court of testimony which will make it necessary to have the juries separated. The trial court told the attorneys that they would have to work a little harder and that the trial court did not anticipate that any of the attorneys would purposely taint the proceedings in front of the jury.

Wilson claims that the spectacle of removing one jury during the course of the trial would place, in the removed juror's minds, the idea that something bad was about to be said about their respective defendant. Therefore, Wilson proposes that defense counsel is in a quandary to either engage in prejudicial cross-examination or create a spectacle of jury removal.

We fail to see the quandary here. The better course is to remove the jury which may be subject to information that they would otherwise be prohibited from hearing. The jury should be instructed, as is done when bench conferences or objections are ruled upon, that they are not to speculate about what went on in their absence and not to hold it against the defendant for whose fate they were deciding.

The trial court, in its initial instructions, told both juries that they would be removed from the court room when evidence was presented that did not pertain to their particular defendant. The trial court asked the jury collectively if they could assure the court that they would "not attempt to draw any inference, or come to any conclusions, or guess at what evidence may be presented or is being presented at the time when you were outside of the courtroom." The jury collectively answered in the affirmative.

We believe that the trial court's instructions to the jury correctly informed them of their duty. We have not found, nor has Wilson presented a record, that they did not follow this admonishment.

Wilson, 983 P.2d at 456-57. The record reflects that the trial court judge entered a Final Amended Trial Schedule establishing the dual jury procedure to be used in Petitioner's trial. See O.R. Vol. III at 389-93. As noted by the OCCA, the record also demonstrates that the trial judge was aware of the potential for error inherent in the procedure and meticulously explained the process to Petitioner's jury. Before swearing in Petitioner's jury the trial court prepared them as follows:

As all of you know from the conversations that we've had over the last couple of days, the procedure that we are going to use in this case that pertains to the four defendants the State of Oklahoma has charged is not an ordinary procedure.

14

It has been the decision of the Court that we are going to use this type of procedure, because it will be more efficient, both as far as our judicial resources are concerned, and logistically that it will be more efficient, that it will lighten the impact on the family members of the defendants in this case.

But, it's important in the Court's mind before this jury is sworn, the 14 of you, for you to tell the Court if it is going to cause any of you any problems on how you concentrate when this case is being conducted, and if it's going to cause any of you any problems in your deliberations.

Do you understand that when we leave this courtroom, a jury has been chosen in Mr. Wilson's case in this courtroom. When all of you come back, and you'll be recognized back on Monday, when all of you come back, you will meet upstairs on the fifth floor in Judge Deborah Shallcross's courtroom. There will be seats up there that will be assigned for each of you, and you will sit in those seats each time when we convene in that courtroom.

And that sitting beside you, in a very large jury box, will be the jury that will have been chosen later on this week, as I explained to you earlier, for Mr. Brown.
. . .
It's important for you to know that when you get upstairs, both defendants and the attorneys for those defendants will be present in the courtroom. And it's also important that all of you be sure that you don't draw any inferences from the fact that both two defendants are present and their attorneys are present and seated at the same table upstairs in that courtroom. Would everyone be able to do that?
. . .
All right. Understand this also: There will be times when there will be evidence presented from the state, possibly from the defense, possibly, as to only one of the defendants. And that will mean that one of the juries will be excluded from the courtroom.

For example, there will be times when the 14 of you will be excused from the courtroom. And there will be evidence that will be presented in the courtroom - - we will still be in session during that time. There will also be times when you will be in the courtroom, and the jury for Mr. Brown will be excused from the courtroom.

It's important, and I need to know from each and every one of you, that you can assure this Court you will not attempt to draw any inference, or come to any conclusions, or guess at what evidence may be presented or is being presented at the time when you were outside of the courtroom. Would everyone be able to do that?

Tr. Trans. 2/5/1997 at 166-69. As noted by the OCCA, the jury collectively answered in the

affirmative to each of the judge's questions. Wilson, 983 P.2d at 457. The state appellate court

15

concluded that Petitioner's concerns about the jury's reactions and the "chilling effect" that may have produced on his attorney's ability to cross-examine witnesses were without merit. Id. The OCCA found that Petitioner was sheltered from prejudice because the trial court's lengthy instructions to the jury adequately informed them of their duty even though the dual jury procedure was not an ordinary procedure. This Court agrees. The jury is presumed to follow its instructions. Weeks v. Angelone, 528 U.S. 225, 234 (2000) (citing Richardson v. Marsh, 481 U.S. 200 (1987)). Petitioner provides no authority to convince this Court that the OCCA's ruling was an unreasonable application of clearly established Supreme Court law, or was based on an unreasonable determination of facts.

Further, the Court is unconvinced that Petitioner's examples of "chilled" cross-examination support his claim of constitutional violations. In the case at hand, Petitioner cites the same examples as in his direct appeal. See Dkt. # 16 at 40-42. Finding that the examples did not establish prejudice, the OCCA stated:

> Wilson points to the fact that his trial counsel failed to cross-examine several witnesses and failed to conduct a thorough cross-examination of Roy Heim, which would have further developed the theory that Wilson was less culpable than the other defendants. The witnesses not cross-examined by Wilson testified about store operations, finding Yost's body and observing Wilson in the QuikTrip between 5 and 6:00 a.m. the morning of the crime.
> . . .
>
> Wilson has not shown that the failure to cross-examine these witnesses caused him to be prejudiced. We have reviewed the testimony and find that the failure to cross-examine these witnesses was based on trial strategy and not on the dual jury system. The lack of cross-examination of Heim regarding the blood trail from the back room toward the register was likewise a decision of strategy. The videotape showed Wilson remaining in the back room after the bat was brought in. The diagram of the scene clearly indicated a lack of blood behind the registers where Wilson was subsequently stationed. Whether or not Wilson created the blood trail was not the determining factor in his conviction and sentence.

16

Id. at 457-58. Petitioner vehemently argues in the petition before this Court that the OCCA was incorrect in finding that trial counsel's failure to cross-examine the referenced witnesses more thoroughly was trial strategy.[7] Petitioner fails, however, to explain how the alleged deficient cross-examination prejudiced his defense. After reviewing the entire trial record, the Court finds Petitioner's prejudice challenge based on the "chilling" effect of the dual jury procedure is without merit. Petitioner has failed to demonstrate a specific and undue prejudice to his defense from the procedure and its effect on his attorney's cross-examination of witnesses. See Smith v. DeRobertis, 758 F.2d 1151, 1152 (7th Cir. 1985).  In light of the evidence of guilt presented by the prosecution, the Court finds the OCCA's determination that Petitioner was not prejudiced by any perceived "chilling effect" on cross-examination of the State's witnesses is not contrary to, or an unreasonable application of, federal law. 28 U.S.C. § 2254(d)(1). Further, the OCCA's decision was not based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). Petitioner is not entitled to relief on this issue.

2.    Attorney conflict of interest

Petitioner next claims that the implementation of the dual jury procedure created a conflict of interest for his trial attorney such as the one described in  Holloway v. Arkansas, 435 U.S. 475 (1978).  He asserts that his trial attorney was required to protect co-defendant Brown during questioning and cross-examination of witnesses. The OCCA explained its rejection of the conflict of issue as follows:

---

[7] The Court acknowledges that Petitioner has attached to his petition an affidavit from his trial counsel, Joe P. Robertson (Dkt. # 16, App. 1). Mr. Robertson testifies that his decisions regarding cross-examination were not trial strategy but a result of the trial court's admonitions. However, he provides no insight into how, if at all, additional cross-examination might have aided Petitioner's defense.

In *Holloway*, counsel was required to represent three different codefendants who had conflicting interests. Trial counsel, as an officer of the court, had filed pre-trial motions advising the trial court of a possible conflict of interest and requested separate counsel. This motion was denied. The Court in *Holloway* determined that when trial counsel, as an officer of the court, claims that a possible conflict of interest will occur because of joint representation, the failure to take adequate steps to resolve the conflict constitutes reversible error. *Holloway*, 435 U.S. at 486-87, 98 S. Ct. at 1180.

In this case, each defendant had separate counsel. Therefore, counsel was not faced with the problems occurring in *Holloway*. The only obligation Wilson's counsel had to the codefendant was to inform the judge when his questions would lead to answers which would not be admissible in the trial of the codefendant. If objectionable questions and answers were presented, it was the responsibility of the codefendant's attorney to raise an objection. At that point it was the trial court's responsibility to determine whether the questioning was prejudicial to the codefendant.

Wilson, 983 P.2d at 457. The OCCA noted that Petitioner did not identify any specific instances where his counsel was acting under an actual conflict of interest, and found no error. Id. Although Petitioner makes the conclusory statement that it "is inconceivable that the double jury system did not cause a conflict of interest" (Dkt. # 16 at 43), he has offered no persuasive authority or argument to convince this Court that his trial was constitutionally defective because of a conflict of interest. He relies upon Holloway and Glasser v. United States, 315 U.S. 60, 71 (1942) (*superceded* on other grounds by federal rule) for his position that prejudice is presumed, even in the absence of specific examples.  However, unlike Holloway and Glasser, Petitioner's co-defendant had separate counsel. The implementation of the dual jury procedure did not create a conflict of interest for his attorney such as the ones described in Holloway or Glasser.  Accordingly, the OCCA's decision that Petitioner was not prejudiced by an attorney conflict of interest does not constitute an unreasonable application of clearly established Supreme Court law.

3.    Deprivation of impartial jury

Petitioner maintains that the dual jury process deprived him of his Sixth Amendment right

18

to be tried by an impartial jury. He asserts that one of the prospective jurors, Ms. Foster, was removed for cause because she was scheduled to be a character witness for co-defendant Brown. Because she stated she could be a fair juror for Petitioner and she was "a black lady," Petitioner contends that her removal by the Court was not justified under Batson v. Kentucky, 476 U.S. 79 (1986). The OCCA found that, "Given the nature of Foster's connection with this case and her relationship with Brown, we cannot say that the trial court abused its discretion in excusing her for cause." Wilson, 983 P.2d at 458.

"The disposition of a Batson claim is a question of fact subjected to the standard enunciated in 28 U.S.C. § 2254(d)(2)." Sallahdin v. Gibson, 275 F.3d 1211, 1225 (10th Cir. 2002) (citing Weaver v. Bowersox, 241 F.3d 1024, 1029-30, 1031 (8th Cir. 2001)). The Oklahoma Court of Criminal Appeals agreed with the trial court that the fact that Ms. Foster was scheduled to be a character witness for one of Petitioner's co-defendants was sufficient for her removal from the venire. Wilson, 983 P.2d at 458.This decision shall be presumed to be correct and must be rebutted by the Petitioner through clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Petitioner has failed to rebut the findings by clear and convincing evidence. The state appellate court's decision was not an unreasonable determination of the facts in light of the evidence nor was it contrary to, or an unreasonable application of Batson and its progeny. Accordingly, habeas relief is denied on this issue.

Petitioner also raises concerns about the seating of the two juries in a crowded courtroom because his jury was seated closer to the victim's family than Mr. Brown's jury. The OCCA found no error in the seating arrangement or the trial court's attempt to alleviate the alleged problem by instructing "the victim/witness coordinator to tell the family members not to talk during the trial and

19

to leave the courtroom if they became emotional." Wilson, 983 P.2d at 458. Petitioner makes no effort to explain how the OCCA's decision was an unreasonable determination of the facts in light of the evidence nor how it was contrary to, or an unreasonable application of federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d). He is not entitled to relief on this claim.

4.     Inadmissible evidence

Petitioner's last claim of prejudice caused by the dual jury procedure concerns the introduction of evidence which he asserts was inadmissible against him. The OCCA denied relief on this issue, finding:

> He claims that evidence was introduced which was more prejudicial than probative on the issue of his guilt and his sentence. His argument rests on the premise that he was not directly involved in the beating death of the victim while his codefendant was; however, the evidence was introduced while both juries were present in the courtroom. This evidence included the testimony of medical examiner Dr. Distefano and photographs of Yost's body and injuries.

> Wilson complains about Dr. Distefano's first stage testimony which went beyond the cause of death. We find the testimony was relevant. It is arguable that Wilson was present at least during the time the first blows with the baseball bat were struck. Furthermore, the State was attempting to prove either felony murder or malice murder. To prove malice murder the State had to prove intent to kill. The testimony regarding the injuries and the bloody crime scene were relevant to show the cause of death and to show an intent to kill.

> Wilson also complains about second stage evidence showing wounds to the hands and autopsy pictures of Yost's head, body and skull. This evidence was relevant against Wilson to show the violent manner in which Yost died and to show the heinous, atrocious or cruel aggravating circumstance.

Wilson, 983 P.2d at 458. Although Petitioner raises the same examples of alleged prejudice in the instant habeas proceeding, he offers no argument or authority to establish a constitutional violation. The Due Process clause of the Fourteenth Amendment provides a mechanism for relief when evidence is introduced that is "so unduly prejudicial that it renders the trial fundamentally unfair."

Payne v. Tennessee, 501 U.S. 808, 825 (1991)(citing Darden v. Wainwright, 477 U.S. 168, 170-83 (1986)).  This Court concludes that the OCCA's rejection of Petitioner's claim on direct appeal is neither contrary to, nor an unreasonable application of, this general principle. The OCCA reasonably concluded that the evidence was relevant to Petitioner's participation in the murder and the violent manner of the crime.  The evidence was not so unduly prejudicial that it rendered Petitioner's trial fundamentally unfair. Accordingly, Petitioner is not entitled to habeas relief concerning this claim.

*C. Structural error*

In both the first (Dkt. # 16 at 47-48) and twentieth (id. at 170-71) claims, Petitioner argues that the unauthorized use of a dual jury procedure constitutes structural error which "requires reversal." He reiterates this position in his reply to Respondent's response (Dkt. # 20 at 7). This argument presumes that the procedure is a constitutional error and should be categorized as structural. A constitutional error is either structural or it is not. Neder v. United States, 527 U.S. 1, 14 (1999). However, it is necessary to find constitutional error before categorizing it as structural or not.  This Court finds, as it did in the opinion denying habeas corpus relief to Petitioner's co-defendant Darwin Brown, that the trial court's utilization of the dual jury procedure is not constitutional error, structural or otherwise. Brown v. Sirmons, 415 F. Supp. 2d 1268, 1279 (N.D. Okla. 2006).  Petitioner has failed to demonstrate that the use of dual juries is constitutionally impermissible and he shall not be entitled to habeas relief on this issue as argued in his first and twentieth claims.

## II.     Warrantless Arrest (Claim 2)

Petitioner argues in his second claim for relief that his arrest on February 26, 1995, was

21

illegal and the introduction of evidence obtained as result of his arrest violated his rights under the

Fourth, Eighth and Fourteenth Amendments. In response, Respondent asserts that Petitioner's

request for relief on this issue is foreclosed by Stone v. Powell, 428 U.S. 465 (1976), because

Petitioner was given an opportunity for a full and hearing on the issue in state court. Petitioner does

not challenge the applicability of Stone in his reply.

### A. Fourth Amendment

The Court will not belabor the merits of Petitioner's request for habeas corpus relief on this

issue because the state courts granted Petitioner a full and fair opportunity to litigate his claim

premised on the Fourth Amendment.  In Stone, 428 U.S. at 494, the Supreme Court stated that where

the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state

prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an

unconstitutional search and seizure was introduced at trial.  The Tenth Circuit has reiterated that a

federal habeas corpus court need not address a Fourth Amendment question as long as the state court

has given the petitioner a full and fair opportunity for a hearing on the issue. Smallwood v. Gibson,

191 F.3d 1257, 1265 (10th Cir. 1999);  Miranda v. Cooper, 967 F.2d 392, 400-01 (10th Cir. 1992);

Gamble v. State, 583 F.2d 1161, 1165 (10th Cir. 1978).  Thus, the threshold question for this Court

is whether Petitioner was provided with an opportunity for full and fair litigation of his Fourth

Amendment claim. Id. at 1164.

In Gamble, the Tenth Circuit noted that "[a]lthough Stone announced a verbal standard, it

failed to clothe the words 'opportunity for full and fair litigation' with any precise meaning."

Gamble, 583 F.2d at 1164. As a result, the Tenth Circuit constructed a definition for that phrase:

> "Opportunity for full and fair consideration" includes, but is not
> limited to, the procedural opportunity to raise or otherwise present a

22

> Fourth Amendment claim. It also includes the full and fair evidentiary hearing contemplated by <u>Townsend</u>.[8] Furthermore, it contemplates recognition and at least colorable application of the correct Fourth Amendment constitutional standards.

<u>Gamble</u>, 583 F.2d at 1165. The definition was further explained in <u>Sanders v. Oliver</u>, 611 F.2d 804 (10th Cir. 1979). In that case, the Tenth Circuit determined that, "'Opportunity' includes procedural opportunity to raise a claim, and it includes a full and fair hearing." <u>Id.</u> at 808.

In this case, the record demonstrates that Petitioner was afforded ample opportunity in the state courts to fully, fairly, and adequately challenge the admissibility of the evidence in question. Petitioner and three co-defendants were charged with first degree murder and robbery with a dangerous weapon in Tulsa County District Court. The trial judge subsequently severed the trials of the four defendants, and scheduled the defendants to be tried two at time in front of dual juries. However, the arraignment, pretrial hearing and pretrial motions hearings were held jointly for all four co-defendants. As acknowledged by Petitioner (Dkt. # 16 at 56), his counsel first raised the issue of an illegal arrest at the preliminary hearing held for all four co-defendants. <u>See</u> Trans. Prelim. Hr'g, 5/22/1995; Trans. Mot. Hr'g, 8/16/1995, Vol. I at 155-56 and Vol. II at 160-61. The trial court rejected Petitioner's arguments and bound Petitioner over for trial as charged. <u>Id.</u> at Vol. I, p. 156.

On October 30, 1996, the trial court heard arguments on the co-defendants' motions to suppress. <u>See</u> Trans. Mot.  Hr'g, 10/30/1996 at 92-163. At the hearing Petitioner's counsel advised the Court that he did not have a pending motion to quash or motion to suppress. He further agreed with the trial judge that it would not be appropriate. <u>Id.</u> at 92. After hearing the evidence and considering the arguments of co-defendants' attorneys, the trial judge denied the co-defendants'

---

[8] <u>Townsend v. Sain</u>, 372 U.S. 293 (1963), *overruled on other grounds by* <u>Keeney v. Tamayo-Reyes</u>, 372 U.S. 293 (1992).

motions. Id. at 162-63. Petitioner clearly had an opportunity to raise this claim and present his arguments before the trial court at the October 30, 1996, motion hearing but he chose not to do so. At a January 30, 1997, pretrial hearing on objections to the state's evidence, Petitioner's counsel argued against admission of evidence obtained as result of the "illegal arrest." See Trans. Mot. Hr'g, 1/30/1997 at 56-8. The trial court overruled the objections. Id.

Petitioner raised his Fourth Amendment claims on direct appeal (see Brief of Appellant in OCCA Case No. F-97-491 at 29-36). The OCCA thoroughly considered the facts underlying Petitioner's claim and determined that there was probable cause for Petitioner's arrest. Wilson, 983 P.2d at 460. Having found that the warrantless arrest was proper, the OCCA also ruled that the trial court did not err in allowing the introduction of evidence obtained as a result of the arrest, including Petitioner's waiver of rights and his confession. Id.

Based on the record, the Court concludes that Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in the state courts.  As a result, this Court is precluded from considering the Fourth Amendment issues raised in Petitioner's application for a writ of habeas corpus based on Stone v. Powell, 428 U.S. 465, 494 (1976); see also Gamble v. State, 583 F.2d 1161, 1165 (10th Cir. 1978) (opportunity for full and fair litigation in state court under Stone v. Powell includes opportunity to raise Fourth Amendment claim, full and fair evidentiary hearing, and recognition and application of correct Fourth Amendment standards).  This Court is convinced that the State provided, and Petitioner received, an opportunity to litigate his Fourth Amendment claims fully and fairly. For that reason, Petitioner is not entitled to habeas corpus relief on his second claim insofar as he argues a violation of his constitutional rights under the Fourth Amendment.

*B. Eighth and Fourteenth Amendments*[9]

Petitioner's summary statement preceding the substantive argument supporting his second claim states that, "By admitting the fruits of the arrest, including a confession from Petitioner, the Court violated his rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution." Petitioner, however, fails to present any factual or legal argument to support the vague and conclusory reference to violations of the Eighth and Fourteenth Amendments in this second ground. Neither is implicated here, as his claims of improper admission of evidence as a result of his arrest are properly considered under the Fourth Amendment. The Court will not assume the role of advocate, and finds that Petitioner has not demonstrated that he is entitled to habeas corpus relief on this portion of his second claim.

**III.   DNA evidence and lack of <u>Daubert</u> hearing (Claim 3)**

For his third claim, Petitioner asserts that his constitutional rights were violated because the results of a polymerase chain reaction (PCR) DNA test were allowed into evidence without the requisite <u>Daubert</u>[10] hearing. He also argues that the state failed to lay the proper foundation for the admissibility of such evidence.  Respondent responds that the DNA evidence was properly admitted and evidentiary matters are state law issues which are generally not cognizable in federal habeas

---

[9] The Eighth Amendment, applicable to the states via the Fourteenth Amendment, prohibits the infliction of cruel and unusual punishments against persons convicted of crimes. <u>Clemmons v. Bohannon</u>, 956 F.2d 1523, 1525 (10th Cir. 1992).

[10] <u>Daubert v. Merrell Dow Pharmaceuticals</u>, 509 U.S. 579 (1993). Under <u>Daubert</u>, several factors are to be considered to determine if new scientific evidence is sufficiently reliable to be admissible. The factors include: (1) whether the scientific methodology has been and can be tested; (2) whether the theory or technique has been subjected to peer review; (3) the known or potential rate of error; and (4) whether the methodology has been generally accepted in its field. The factors are designed to ensure that the expert's testimony rests on a reliable foundation and is relevant to the task at hand. <u>Id.</u> at 593-94.

proceedings. On direct appeal, the OCCA found that the trial court did not err in allowing the introduction of the PCR DNA test results. Wilson, 983 P.2d at 460-61.

"As a general matter, federal habeas corpus relief does not lie to review state law questions about the admissibility of evidence, and federal courts may not interfere with state evidentiary rulings unless the rulings in question rendered 'the trial fundamentally unfair as to constitute a denial of federal constitutional rights.'" Moore v. Marr, 254 F.3d 1235, 1246 (10th Cir. 2001) (internal citation omitted) (quoting Tucker v. Makowski, 883 F.2d 877, 881 (10th Cir. 1989)). As noted by the OCCA in its direct appeal opinion, Petitioner did not object to the introduction of the DNA evidence on the basis that it was unreliable or irrelevant. Although use of the PCR test had not been specifically approved by the OCCA prior to Petitioner's trial, the test was subsequently determined by the state appellate court to be reliable and admissible in the State of Oklahoma. Wilson, 983 P.2d at 461 (citing Wood v. State, 959 P.2d 1 (Okla. Crim. App. 1998)). The Oklahoma appellate court specifically found in Wood that the PCR test for DNA evidence satisfies the requirements of Daubert. See Wood, 959 P.2d at 11. In Petitioner's direct appeal, the OCCA found no error in the admission of the PCR DNA test results during Petitioner's trial. Wilson, 983 P.2d at 461.

Here, Petitioner contends that the expert witness testifying about the DNA test results at his trial did not explain how she was qualified to provide her statistical analysis, and did not explain the procedures followed in performing the PCR testing. He claims that the DNA evidence "was very damaging to Petitioner because it purported to put the blood of the victim on the steering wheel of his car and on items found at his residence." See Dkt. # 16 at 71-2. In light of the overwhelming evidence of Petitioner's guilt presented at trial, exclusive of the blood evidence, this Court does not find that the admission of the PCR DNA evidence rendered his trial fundamentally unfair. As a

result, the Court finds that Petitioner has failed to establish a federal habeas claim based on the admissibility of the DNA evidence under state law. Moreover, on cross-examination Petitioner's trial counsel challenged both the qualifications of the expert witness giving the DNA testimony and the accuracy of the DNA results (Tr. Trans. 2/18/97 at 262-72), which further establishes that the admission of this evidence did not render his trial fundamentally unfair. Petitioner is not entitled to relief on this claim.

**IV.   Admission of Evidence and Testimony (Claim 4)**

Petitioner claims in his fourth ground for relief that the trial court infringed upon his constitutional rights by allowing the admission of evidence in violation of the Oklahoma discovery code and refusing to grant a continuance. Specifically, Petitioner objects to the introduction of DNA evidence which was not provided to Petitioner's counsel until shortly before trial. Further, the trial court denied Petitioner's request for a continuance to review the reliability of DNA materials. Respondent asserts Petitioner's claims involve evidentiary matters not cognizable in federal habeas corpus proceedings. Respondent also contends that Petitioner's claim, insofar as it relates to Petitioner's liberty interest created under the state discovery code, is procedurally barred because it was never presented to the state court. The Court disagrees with Respondent's contention that this portion of Petitioner's claim was not presented to the state court.[11]

---

[11] Petitioner asserted in both his direct appeal brief (Brief of Appellant filed April 7, 1998, in OCCA case No. F-97-491, at 44) and in his petition for habeas corpus relief (Dkt. # 16 at 72) that the trial court's ruling on the discovery code issue was a violation of Petitioner's Fourteenth Amendment rights. The federal cases cited by Petitioner in support of his habeas corpus argument concerning a due process liberty interest (Dkt. # 16 at 75) are simply an expansion of his claim that his Fourteenth Amendment rights were violated. The due process issue was presented to the OCCA on direct appeal. Because the OCCA found no violation of the discovery code, it was unnecessary for the State appellate court to specifically address the due process claim.

This claim was presented on direct appeal. The OCCA found:

Wilson complains in proposition five that the trial court abused its discretion in allowing the introduction of the DNA test results in violation of the Oklahoma Discovery Code. Wilson argues alternatively that the trial court should have granted a continuance so that defense counsel could have time to rebut the State's evidence.

In response to Wilson's discovery motion, the prosecution notified Wilson's counsel, by phone, on Friday January 24, 1997, ten days before trial, that he could come by and pickup additional discovery, which consisted of a copy of the entire file. On January 27, trial counsel obtained the discovery material. Wilson now complains that this notice was insufficient and as such that several items of tangible evidence, witness testimony and the results of scientific tests should have been excluded from the trial.

Title 22 O.S. 1991, § 2002, provides, in part, that the State shall disclose, upon request by the defense, "names and addresses of witnesses which the State intends to call at trial" with their statements or summaries thereof, any results of scientific tests, experiments or comparisons and any tangible objects which the prosecution intends to use at trial.

It appears that codefendant Brown's counsel filed all of the motions to exclude and argued the motions and Wilson's counsel merely joined in the motions. The trial court denied the request for the exclusion of this evidence. Counsel asserted that he did not learn the results of the forensic analysis until he picked up the materials on January 27, 1997. During the motion hearing on January 27, the prosecutor stated that he had made a statement at a prior motion hearing that the DNA reports would be available for all parties. The trial court also recalled the statement. Some mention was made that this occurred at the hearing held on October 30, 1996, but the transcript of that hearing does not contain such statements. The trial court did not recall whether the conversation was on the record or not. The trial court took counsel's motion to exclude the evidence under advisement and gave the attorneys time to read the reports and appear at a later date. The trial court specifically found that the State complied with the discovery code by disclosing the evidence on January 24. On February 3, 1997, the trial court denied counsel's motion to exclude the DNA evidence and the motion for continuance.

Based on the facts available to the trial court, we cannot say that the trial court abused its discretion in finding that the State complied with the Discovery Code. Furthermore, the trial court did not abuse its discretion in failing to exclude the DNA evidence or in failing to grant a continuance.

Wilson, 983 P.2d at 461.

The boundaries of this Court's review of a state court's decision have been specifically addressed by the Supreme Court:

> We have stated many times that "federal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990); *see also* Pulley v. Harris, 465 U.S. 37, 41, 104 S.Ct. 871, 874-75, 79 L.Ed.2d 29 (1984). Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975) (*per curiam*).

Estelle v. McGuire, 502 U.S. 62, 67-8 (1991).

Petitioner relies on Vitek v. Jones, 445 U.S. 480,488 (1980), and Hicks v. Oklahoma, 447 U.S. 343,346 (1980), in support of his argument that the failure of the trial court to follow the Oklahoma discovery code rules was a violation of his due process liberty interests. Although both cases reiterate the well settled rule that states "may create liberty interests that are entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment," Vitek, 445 U.S. at 488, neither case indicates that due process protections attach to state discovery code rules. Even if it is assumed, *arguendo*, that constitutional protection does extend to a defendant's reliance on discovery code rules, this Court agrees with the OCCA that the rules were not violated in Petitioner's case. See Wilson, 983 P.2d at 461.

 Further, Petitioner has failed to demonstrate that any error of the state court, if one occurred, was so grossly prejudicial that it fatally infected his trial. Accordingly, this evidentiary determination by the state court is beyond the province of this Court to review for habeas relief. Fox v. Ward, 200 F.3d 1286, 1296 (10th Cir. 2000) (state court's evidentiary rulings will not be disturbed on habeas review unless petitioner demonstrates court's error was so grossly prejudicial that it

fatally infected the trial and denied the fundamental fairness that is the essence of the process). Petitioner is not entitled to relief on his fourth claim.

## V.      **Chain of Custody (Claim 5)**

In his fifth claim for habeas relief, Petitioner alleges again that his right to due process was violated by the admission of certain evidence during his trial.  Specifically, Petitioner contends that the prosecution did not sufficiently establish the chain of custody for the blood sample items supporting DNA testimony admitted into evidence. He also questions the reliability of the State's witnesses concerning other items of forensic evidence including a piece of amber glass which came from the QuikTrip cooler. The OCCA addressed the merits of this claim and found that the chain of custody was adequately established for the jury's consideration.

As an initial matter, Petitioner has failed to assert a basis for finding that the OCCA's rejection of these claims on direct appeal warrants issuance of the writ under 28 U.S.C. § 2254(d). Furthermore, as noted above, "[i]n a habeas proceeding claiming a denial of due process, 'we will not question the evidentiary ... rulings of the state court unless [the petitioner] can show that, because of the court's actions, his trial, as a whole, was rendered fundamentally unfair.'" Maes v. Thomas, 46 F.3d 979, 987 (10th Cir.1995) (quoting Tapia v. Tansy, 926 F.2d 1554, 1557 (10th Cir.1991)).  "[W]e approach the fundamental fairness analysis with 'considerable self-restraint.'" Jackson v. Shanks, 143 F.3d 1313, 1322 (10th Cir.1998) (quoting United States v. Rivera, 900 F.2d 1462, 1477 (10th Cir.1990)). A proceeding is fundamentally unfair under the Due Process Clause only if it is "'shocking to the universal sense of justice.'"  United States v. Tome, 3 F.3d 342, 353 (10th Cir.1993) (quoting United States v. Russell, 411 U.S. 423, 432 (1973)) (internal quotation omitted).

30

Chain of custody issues such as those raised by Petitioner turn on interpretations of state law and are generally not cognizable under 28 U.S.C. § 2254. See, e.g., Summer v. Mata, 455 U.S. 591 (1982); Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974). In Oklahoma, "[a]ny weakness in chain of custody goes to the weight to be given to the evidence and does not prevent admissibility." Frederick v. State, 37 P.3d 908, 937 (Okla. Crim. App. 2001). "The purpose of the chain of custody rule [in Oklahoma] is to guard against substitution of or tampering with the evidence between the time it is found and the time it is analyzed." McCarty v. State, 904 P.2d 110, 126 (Okla. Crim. App. 1995) (quotation and citation omitted). It is not strictly necessary, as a matter of constitutional law, to prove that the object is what it is alleged to be before admitting the object. Thus, even if evidence were not properly admissible under state law, Petitioner must demonstrate that its admission was fundamentally unfair.

## A. Blood and DNA evidence

In this case, Petitioner questions the chain of custody of blood evidence supporting DNA testimony given by Cindy Brown and lab work by Jamie Yorkston. The OCCA determined that a sufficient chain of custody was established to find that there was a reasonable probability that the blood evidence introduced was the blood evidence found at the various locations identified by the witnesses.

> We find that the items from which blood samples were taken were properly admitted because witnesses identifying these items testified that they were in the same condition as they were when they were found. However, Wilson did not object to the handling of the blood samples taken from these items at the time evidence was introduced regarding the blood analysis. Although his cross-examination of Yorkston questioned the handling of the blood samples, he still did not object to the evidence of blood analysis based on a lack of a chain of custody. . . . We find that the admission of bloodstains did not rise to the level of plain error.

Wilson, 983 P.2d at 448. Petitioner has failed to provide any argument or federal authority to show

31

that he was denied a fundamentally fair trial. Whether the blood evidence introduced at trial and used in the DNA analysis was the blood evidence seized from the QuikTrip and from items retrieved from the co-defendants was for the jury to decide.  The Court concludes that habeas corpus relief on this ground should be denied.

### B. Amber glass

Petitioner also complains about Ms. Yorkston's testimony regarding a piece of amber glass. She indicated that the largest piece of glass taken from a plastic bag matched three pieces of glass from the QuikTrip cooler. Tr. Trans. 2/12/1997 at 239-40. Petitioner correctly points out that Ms. Yorkston did not identify the plastic bag or the amber glass by its court evidence number. She testified that the glass she examined came from "item S-41", which was an OSBI numbering system. Respondent claims that the plastic bag with glass fragments was among the evidence items collected by Detective Makinson from Petitioner's front porch  See Dkt. # 18 at 37-8. However, the trial record does not reveal the actual chain of custody of the amber glass nor does it clearly indicate the source of the pieces of glass examined by Ms. Yorkston. However, in light of the abundant evidence supporting Petitioner's conviction, this Court does not find that any confusion raised by the custody trail of a piece of amber glass rendered Petitioner's trial fundamentally unfair. Petitioner is not entitled to relief on this claim.

### VI.    Lack of second degree felony murder instruction (Claim 6)

Petitioner next claims that the trial court committed constitutional error in denying Wilson's requested jury instruction on the lesser offense of second degree felony murder (Tr. Trans. 2/13/1997 at 126-27). Petitioner contends that the lesser included offense was warranted because the robbery was not effected with a dangerous weapon, but through force and fear. Thus, the

predicate felony (robbery with a dangerous weapon) for first degree murder was not proven and he

was entitled to a second degree felony murder instruction.[12] He also asserts that he was entitled to

the instruction because he did not have the requisite intent to kill with a dangerous weapon and was

not present in the back room when the victim was beaten to death with a baseball bat. Relying

principally on Beck v. Alabama, 477 U.S. 625 (1980), Petitioner contends his Eighth and Fourteenth

Amendment rights were violated as a result of the trial court's refusal to instruct the jury on second

degree murder. In response, the Respondent declares that the OCCA's rejection of this claim was

not contrary to established federal law as determined by the Supreme Court.

Jury instructions on lesser included offenses need only be given where evidence exists to

support such instruction. See Stouffer v. Reynolds, 168 F.3d 1155, 1170 (10th Cir. 1999); Bryson

v. State, 876 P.2d 240, 255 (Okla. Crim. App. 1994). In Duvall v. Reynolds, the Tenth Circuit

examined this issue:

> In Beck v. Alabama, 447 U.S. 625, 638, 100 S. Ct. 2382, 2390, 65 L. Ed. 3d 392
> (1980), the Supreme Court held that in a capital case, due process requires that a jury
> be given the option of convicting a defendant on a lesser included noncapital offense
> if the evidence would support conviction on that offense.
> . . .
> A state, however, is not required to "create a noncapital murder offense for every set
> of facts under which murder may be committed." Hatch v. State, 58 F.3d 1447, 1454
> (10th Cir. 1995). A trial court must instruct the jury on a noncapital offense as
> defined by state law only if the evidence would have supported such a verdict. Beck,
> 447 U.S. at 627, 100 S. Ct. at 2384.

Duvall v. Reynolds, 139 F.3d 768, 786 (10th Cir. 1998).

In Petitioner's direct appeal, the OCCA failed to find evidence to support a second degree

---

[12] Under Oklahoma law, robbery by force and fear is not one of the enumerated felonies
that can serve as an underlying felony for first degree felony murder. Okla. Stat. tit. 21, §
701.7B. Murder in the second degree includes murder perpetrated in the commission of robbery
by force and fear. Okla. Stat. tit. 21, § 701.8(2).

felony murder instruction.

> "Robbery, the predicate felony in second degree felony murder, cannot be accomplished with a dangerous weapon. If it is, the offenses are Robbery with a Dangerous Weapon and first degree felony murder." *Foster v. State*, 1986 OK CR 19, ¶ 31, 714 P.2d 1031, 1039, *cert. denied*, 479 U.S. 873, 107 S.Ct. 249, 93 L.Ed.2d 173. In this case, the evidence clearly showed the victim was beaten to death with a baseball bat, a dangerous weapon which was used to complete the robbery. Where there is no evidence to support a lesser included offense the court has no right to ask the jury to consider the issue. *Boyd v. State*, 1992 OK CR 40, ¶ 11, 839 P.2d 1363, 1367-68, *cert. denied*, 509 U.S. 908, 113 S. Ct. 3005, 125 L.Ed.2d 697 (1993). There was no evidence other than the evidence that a dangerous weapon was used to commit the robbery. Accordingly, we find no error.

Wilson, 983 P.2d at 463. The Tenth Circuit has confirmed that, "[O]nce the state has established that a defendant used a dangerous weapon in the course of a robbery that results in death, the offense of second degree murder is no longer an option under Oklahoma law." Fowler v. Ward, 200 F.3d 1302, 1309 (10th Cir. 2000) (citing Hatch v. Oklahoma, 58 F.3d 1447, 1454 (10th Cir. 1995)), *partial overruling on other grounds recognized in* Moore v. Marr, 254 F.3d 1235, 1240 (10th Cir. 2001). Petitioner argues that "the bat was never intended as a murder weapon" and the victim was not robbed with a bat. (Dkt. #16 at 86). The Court agrees with Petitioner that the evidence shows the baseball bat was not used initially to subdue the victim. However, the Court cannot agree with Petitioner's argument that the bat was not used in the course of the robbery. Petitioner's argument that the murder was committed with a bat, but the bat was not used to commit the robbery is implausible. The facts support the OCCA's conclusion that the victim was murdered during the course of a robbery with a dangerous weapon at the QuikTrip. Under 28 U.S.C. § 2254(e)(1), the Court must afford this factual finding a presumption of correctness. In addition, the presumption of correctness can only be rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Petitioner has failed to meet this burden.

Accordingly, the trial court's refusal to give a second degree felony murder instruction did not constitute a violation of Petitioner's constitutional rights. The state appellate court's decision was not contrary to federal law, as established by the Supreme Court, nor was it an unreasonable application of the facts to that law. Relief is therefore denied on this issue.

## VII.   Miranda warning (Claim 7)

In Petitioner's seventh claim for habeas relief he asserts that his constitutional rights under the Fifth, Eighth and Fourteenth Amendments were violated when he was questioned by police on February 16, 1995, after being stopped for traffic violations. The factual background of this claim was summarized by the OCCA as follows:

> Wilson contends that the trial court erred in allowing, during the second stage, the admission of his statements made to police on February 16, 1996 [sic]. It seems that Wilson was pulled over for speeding by Sgt. Samuel McCullough of the Tulsa Police Department ten days before he was involved in the murder of Yost. During that traffic stop Wilson was asked to step from the car and provide identification. Wilson had no identification so he was asked to sit in the patrol car. While in the patrol car McCullough asked Wilson who he was and asked about his arrest record. Wilson identified himself and said that he had been arrested in a double homicide in October of 1994 and was awaiting sentencing on a lesser charge of accessory to murder. Wilson was asked if he had any guns or drugs in his vehicle and Wilson stated "No, you can look if you want to." During the search of the vehicle, Sgt. McCullough observed a black baseball bat and found a loaded .25 caliber handgun under the passenger seat.

Wilson, 983 P.2d at 464. Petitioner claims that his February 16th statements to Sgt. McCullough were inadmissible because he was not given a Miranda[13] warning. He also contends that Sgt. McCullough's testimony about finding a gun and baseball bat in Petitioner's car was improperly allowed because his consent to search the car was made during an illegal interrogation. Although Petitioner's trial counsel objected to McCullough's testimony on the basis that it did not support the

_____

[13] Miranda v. Arizona, 384 U.S. 436 (1966).

continuing threat aggravator, he did not challenge the evidence on <u>Miranda</u> grounds. Accordingly, the OCCA found that the issue was waived for all except plain error review. The OCCA found no plain error in the admission of this evidence, concluding that, "Wilson was not in custody for purposes of *Miranda* and the consent to search was voluntary." <u>Id.</u> Respondent argues that the OCCA correctly concluded that Sergeant McCullough was not required to inform Petitioner of his <u>Miranda</u> rights at the time the statements were made because Petitioner was not in custody. Further, Petitioner's consent to search his car was voluntarily given.

This Court begins by determining the relevant clearly established federal law. The rights recognized by the Supreme Court in <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), include the requirement that police officers, prior to the initiation of custodial interrogation, "must inform him of his rights to remain silent and to 'have counsel present ... if he so desires.'" <u>Moran v. Burbine</u>, 475 U.S 412, 420 (1986) (quoting <u>Miranda</u>, 384 U.S. at 468-70). For the protections of <u>Miranda</u> to apply, however, "custodial interrogation" must be imminent or presently occurring. <u>U.S. v. Rambo</u>, 365 F.3d 906, 909 (10th Cir. 2004) (citing <u>United States v. Bautista</u>, 1445 F.3d 1140, 1147 & n.3 (10th Cir. 1998)). The custody test articulated in <u>Thompson v. Keohane</u>, 516 U.S. 99, 112 (1995), requires a court to consider the circumstances surrounding the interrogation and then determine whether a reasonable person would have felt at liberty to leave.

Furthermore, during the pendency of a lawful traffic stop, a police officer may ask a detainee a moderate number of questions relevant to the stop without the necessity of a <u>Miranda</u> warning. <u>Berkemer v. McCarty</u>, 486 U.S. 420, 439-40 (1984). An officer may require a valid driver's license and proof of entitlement to operate a vehicle, run a computer check, and issue a citation. <u>United States v. Standoval</u>, 29 F.3d 537, 540 (10th Cir. 1994). Additional questioning may be justified if the

driver cannot provide a driver's license. See United States v. Hunnicut, 135 F.3d 1345, 1349 (10th Cir. 1998). Further, an officer may conduct a warrantless search of a vehicle if the person in control of the vehicle voluntarily consents to the search. United States v. Zubia-Melendez, 263 F.3d 1150 (10th Cir. 2001). Petitioner acknowledges that he was stopped for speeding and asked to produce his driver's license. When he could not produce a license the officer questioned him further. Petitioner then voluntarily consented to a search of his vehicle. Petitioner does not present any evidence that the traffic stop, subsequent questioning or voluntary search of his vehicle were unlawful. A Miranda warning was not required for the officer's initial questions pursuant to Berkemer, and the subsequent search of Petitioner's vehicle was consensual. The state court's adjudication of this claim did not involve an unreasonable application of clearly established Supreme Court law when it determined that Petitioner was not "in custody" for purposes of Miranda. 28 U.S.C. § 2254(d)(1). Petitioner is not entitled to habeas corpus relief on his seventh claim.

## VIII.   Evidentiary harpoon (Claim 8)

As his eighth proposition of error Petitioner alleges that his Sixth Amendment right to confront a witness was violated during second stage proceedings when Sergeant Huff of the Tulsa Police Department testified about a previous charge. Specifically, Petitioner complains that Sergeant Huff's answer to the prosecutor's question was an evidentiary harpoon. An "evidentiary harpoon" is a "metaphorical term of art that has been used by several state courts to describe the situation where a government witness, while testifying in a criminal case, deliberately offers inadmissible testimony with the purpose of prejudicing the defendant." United States v. Hooks, 780 F.2d 1526, 1535 n.3 (10th Cir. 1986) (citing, among other cases, Bruner v. State, 612 P.2d 1375, 1378 (Okl.Crim.1980)). Sergeant Huff's third answer in the following exchange constitutes the alleged

37

evidentiary harpoon:

> Q:     Do you recall when you came into contact with the defendant?
>
> A:     At approximately 7:30 p.m. on the night of September 11, 1994.
>
> Q:     So that would have been the day after that particular homicide?
>
> A:     Yes, sir.
>
> Q:     And what was the purpose of your visit or contact?
>
> A:     I was going to contact him for Detective Gary Meek, who was assigned that investigation, as it was known that he had been driving a vehicle which matched the description as the vehicle used in that homicide the previous night.

Tr. Trans. 2/18/1997 at 33. The OCCA denied relief on this issue in its direct appeal opinion, finding:

> In proposition nine, Wilson claims that during the second stage he was the victim of an evidentiary harpoon which came in the form of prejudicial hearsay. Sgt. Huff testified regarding Wilson's previous conviction for accessory after the fact of murder. During his testimony he testified that he was contacting Wilson for another detective because "it was known that he [Wilson] had been driving a vehicle which matched the description as the vehicle used in that homicide the previous night."
>
> Wilson admits, in a footnote, that his attorney failed to object to the answer, and claims that the testimony constitutes plain error because it violated his Sixth Amendment right to confrontation. "Plain error is that error which goes to the foundation of the case, or which takes from a defendant a right essential to his defense." *Cleary v. State*, 1997 OK CR 35, ¶ 81, 942 P.2d 736, 752, *cert. denied*, 523 U.S. 1079, 118 S.Ct. 1528, 140 L.Ed.2d 679 (1998).
>
> We find that the answer did not rise to the level of plain error. First, Wilson was not harmed by this statement because after being brought in by Huff, Wilson told Sgt. Meek about his involvement in the drive by shooting. Second, the answer was in response to questioning about why Huff was contacting Wilson. The answer was given, not for the truth of the matter asserted, but to explain why he was contacting Wilson.

Wilson, 983 P.2d at 464.  After considering the exchange between the prosecutor and the witness in light of the entire record, the Court finds that the challenged remark fails to come within the

definition of an evidentiary harpoon.  There is no evidence that the response to the question was wilfully intended to prejudice Petitioner.  In addition, the Court agrees with the OCCA that the testimony was offered as an explanation about why Sgt. Huff contacted Petitioner and was not offered as proof that Petitioner was driving a vehicle during a drive by shooting. Lastly, Petitioner had admitted his involvement in the drive by shooting to Sgt. Meek. Petitioner has not presented any argument to convince the Court that the OCCA's decision was an unreasonable application of clearly established Supreme Court law or an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

Without supporting legal authority, Petitioner also asserts that this alleged "evidentiary harpoon" violated his constitutional right to a fair trial as guaranteed by the Eighth and Fourteenth Amendments. In order for a federal court to grant habeas relief on state court evidentiary matters, the testimony in question must have rendered his trial "so fundamentally unfair that a denial of constitutional rights results." Harris v. Poppell, 411 F.3d 1189, 1197 (10th Cir. 2005); Smith v. Gibson, 197 F.3d 454, 460 (10th Cir. 1999). Based on the entire record, the Court concludes that Sgt. Huff's statement did not result in a trial so fundamentally unfair as to deny Petitioner due process.

Although the OCCA failed to cite any federal cases in reaching its decision, it is not required to do so. See Welch v. Sirmons, 451 F.3d 675, 687 (10th Cir. 2006) (citing Early v. Packer, 537 U.S. 3, 8 (2002) (finding that a state court is not required to cite to, nor even be aware of, controlling Supreme Court precedent "so long as neither [its] reasoning nor the result of [its] decision contradicts" such precedent)). This Court concludes that the decision of the OCCA on this issue did not involve an unreasonable application of Supreme Court law. Habeas relief shall be denied on Petitioner's eighth claim.

## IX.    Heinous, atrocious, or cruel aggravator (Claims 9 and 15)

In his ninth claim, Petitioner contends that the State failed to introduce sufficient evidence to support the finding that the murder of Mr. Yost was especially heinous, atrocious, or cruel in violation of Petitioner's rights under the Eighth and Fourteenth Amendments. Specifically, Petitioner asserts that the prosecution failed to present evidence of torture or serious physical abuse as required by Oklahoma law for application of the HAC aggravator.  He also claims that there was no evidence that Petitioner inflicted the physical abuse on the victim or that he intended that such abuse be inflicted. Respondent contends that the evidence supported a finding that Mr. Yost suffered both mental torture and endured conscious physical suffering sufficient to satisfy the HAC requirements.

In his fifteenth claim Petitioner asserts that the HAC aggravator, as applied and defined in the jury instructions, is unconstitutionally vague.

### A. Torture or serious physical abuse

Petitioner claims that the evidence did not support the jury's finding that the murder was especially heinous, atrocious or cruel because the murder was not preceded by torture or serious physical abuse. See Medlock v. Ward, 200 F.3d 1314, 1321 (10th Cir. 2000) (HAC aggravator under Oklahoma law requires torture or serious physical abuse characterized by conscious suffering). The OCCA rejected this claim on direct appeal, finding that Mr. Yost suffered extreme mental anguish, a form of torture under Oklahoma law. Wilson, 983 P.2d at 464-65.

> The medical examiner testified that the first blow by the baseball bat could have rendered Yost unconscious. However, before the baseball bat was ever introduced into the attack, Yost was attacked and dragged into the back room by his four assailants. Yost screamed for help while the bat was being retrieved from the car. Obviously he was being restrained at that time by Wilson and another defendant. Yost suffered injuries to his hands, arguably coming from the blow from the bat, indicating defensive wounds. There was a piece of metal from the handcuff imbedded in Yost's head indicating that he had his hands between his head and the bat. In the surveillance

40

> tape noises can be heard during the attack after the baseball bat was taken to the cooler where Yost was being held. Once the bat arrived, it is possible that Yost was struck and rendered unconscious with one blow. However, we find that before the bat was brought into the attack, Yost had suffered the extreme mental anguish of being held captive, knowing that his ultimate fate rested in the hands of his attackers whom he could identify if left to live.

Id. Continuing to address the "extreme mental cruelty" prong of the HAC aggravator, the state appellate court went on to say:

> There is ample evidence of the extreme mental anguish suffered by Yost prior to his death. This evidence illustrates the realization by Yost that he was going to be harmed and even killed by the gang of robbers who had overpowered him and dragged him into a back room.

Id. at 465. Further, in its mandatory sentence review pursuant to Okla. Stat. tit. 21, § 701.13 (c), the OCCA upheld Wilson's death sentence, specifically finding that the aggravating circumstances were supported by sufficient evidence. Id. at 473. Petitioner argues that the OCCA's conclusion was based upon an unreasonable determination of the facts.

The appropriate standard of review is the rational factfinder test established in Jackson v. Virginia, 443 U.S. 307, 319 (1979). Lewis v. Jeffers, 497 U.S. 764, 781 (1990). The relevant habeas question under the Jackson standard is to ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the [aggravating circumstance] beyond a reasonable doubt." Jackson, 443 U.S. at 319; Lewis, 497 U.S. at 783 (considerations also apply to federal habeas review of state court's finding of aggravating circumstances). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. The Tenth Circuit has emphasized that, under Jackson, review is "sharply limited" and a court "faced with a record of historical facts that supports

41

conflicting inferences must presume - even if it does not affirmatively appear in the record - that the

trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."

Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting Wright v. West, 505 U.S. 277,

296-97 (1992)).  This Court's review is limited to deciding whether the OCCA's decision that there

was sufficient evidence to support a jury's finding of the HAC aggravator was contrary to or an

unreasonable application of Jackson. 28 U.S.C. § 2254(d)(1); Spears v. Mullin, 343 F.3d 1215, 1238

(10th Cir. 2003).

In applying the Jackson standard, the Court looks to Oklahoma law to determine the

substantive elements of the aggravating circumstance. Under Oklahoma law, the HAC aggravator is

properly found when the murder was preceded by torture or serious physical abuse. Medlock, 200

F.3d at 1321 (10th Cir. 2000). The instructions given to the jury at Petitioner's trial conformed to

Oklahoma law, advising the jury that the phrase "especially heinous, atrocious, or cruel" is directed

to those crimes where the death of the victim was preceded by torture of the victim or serious

physical abuse. See O.R. Vol. II at 370.

The OCCA has determined that the torture element requires proof of either great physical

anguish or extreme mental cruelty. Berget v. State, 824 P.2d 364, 373 (Okla. Crim. App. 1991).

Torture creating extreme mental distress must be the result of intentional acts by the defendant. Id.

Physical abuse requires evidence of conscious, physical suffering. Romano v. Gibson, 239 F.3d 1156,

1176 (10th Cir. 2001); see also Powell v. State, 906 P.2d 765, 779-80 (Okla. Crim App. 1995)

(recognizing that it is critical for the State to prove the victim's conscious physical suffering before

death); Spears v. State, 900 P.2d 431, 443 (Okla. Crim. App. 1995).

> To prove a murder was especially heinous, atrocious or cruel, the State
> must introduce competent evidence indicating the victim's death was

42

preceded by torture or serious physical abuse, which may include the infliction of either great physical anguish or extreme mental cruelty. Perry v. State, 893 P.2d 521, 533-34 (Okl. Cr.1995); Booker v. State, 851 P.2d 544, 548 (Okl. Cr.1993); Battenfield v. State, 816 P.2d 555, 565 (Okl. Cr.1991), cert. denied, 503 U.S. 943, 112 S.Ct. 1491, 117 L.Ed.2d 632 (1992). To support a finding of serious physical abuse, the State must show the victim endured conscious physical suffering prior to death. Stafford v. State, 832 P.2d 20, 23 (Okl. Cr. 1992).

. . .

As we stated in Perry, it is critical the State prove the victim consciously suffered prior to death. Perry, 893 P.2d at 534 Prosecutors have proved this aggravator by introducing evidence the victim suffered numerous defensive wounds indicating that the victim was conscious and attempted to fight off her attacker; statements from the defendant indicating the victim consciously suffered serious physical abuse or extreme mental cruelty prior to death; witness testimony that the victim was alive and conscious at the time the physical abuse was inflicted; or medical evidence that the victim was conscious during the infliction of serious physical injury.

Powell v. State, 906 P.2d 765, 779-80 (Okla. Crim. App.1995).

Additionally, the OCCA has stated that there are no "specific, uniform criteria, applicable to all murder cases, which would make the application of the 'heinous, atrocious or cruel aggravator' a mechanical procedure." Robinson v. State, 900 P.2d 389, 401 (Okla. Crim. App. 1995). "Rather, the examination of the facts of each and every case is necessary in determining whether the aggravator was proved." Id. While evaluating the particular evidence introduced at Petitioner's trial, the Court must accept the jury's resolution of the evidence as long as it is within the bounds of reason. Grubb v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993).

Petitioner argues that there was no evidence to support either limiting factor (torture or serious physical abuse) required in the HAC aggravator. Respondent counters that the evidence reveals that the victim suffered both extreme mental anguish and serious physical abuse.

The evidence in the instant case, when viewed in the light most favorable to the State,

43

supports the OCCA's finding that the death of Mr. Yost was preceded by extreme mental anguish and physical abuse. The medical examiner testified that Mr. Yost died of blunt trauma to the head. (Tr. Trans. 2/13/1997 at 48). The videotape of the incident reveals that a struggle took place between the victim and his attackers.  (State's Exhibit # 1).The medical examiner testified that wounds on the victim's hands and fingers were consistent with defensive wounds (Tr. Trans. 2/13/1997 at 37), and wounds on one wrist were consistent with evidence of a struggle while the victim was handcuffed. Id. at 30. Defensive wounds on the victim's hands, fingers and wrist plainly demonstrate that he did not lose consciousness swiftly but was aware of what was happening to him. Additionally, a hinge from the handcuffs was removed from the victim's skull indicating he had placed his hands between the bat and his head in a defensive posture. Further, Mr. Yost was bound prior to his death, evidencing he was conscious during part of the attack. See Romano v. Gibson, 239 F.3d 1156, 1177 (10th Cir. 2001) (bound arms and legs were evidence victim was conscious during part of the attack as there would be no need to bind a dead person). In light of the foregoing, this Court concludes there was sufficient evidence of extreme mental anguish and conscious suffering to fall within Oklahoma's narrowed scope and preserve the application of the heinous, atrocious or cruel aggravating circumstance to this case. See Medlock v. Ward, 200 F.3d 1314, 1322 (10th Cir. 2000). The finding by the jury of the HAC aggravator is rationally supported by the evidence. Jackson v. Virginia, 443 U.S. 307 (1999). Accordingly, the OCCA's decision upholding the jury's finding of the HAC aggravator was not unreasonable. Petitioner is not entitled to habeas corpus relief on this issue.

### B. Participation by Petitioner

Petitioner also alleges the application of the HAC aggravator was improper because the State

failed to prove that Petitioner killed Yost, attempted to kill Yost, or intended the death of Yost. The

OCCA denied relief on this issue, stating:

> In the second portion of this proposition, Wilson claims that the especially heinous, atrocious, or cruel aggravator does not apply to him because he did not inflict the serious physical abuse, nor did he intend that such abuse be inflicted. Wilson citing *Tison v. Arizona*, 481 U.S. 137, 107 S. Ct. 1676, 95 L.Ed.2d 127 (1987) correctly claims that, in a felony murder prosecution, the State must at least show that the accused substantially participated in the killing.
> . . .
>
> The evidence that Wilson substantially participated in the killing is clear. Wilson was involved in the initial subduing of Yost. He admitted that he knew that Yost would be killed. Wilson even supplied the bat used to beat Yost to death. He was present in the back room when the bat was brought in by Harjo. He was present when sounds of the first blow can be heard on the audio/videotape. He had to know that a beating with a baseball bat would cause serious conscious physical suffering and death. *See Hatch v. State,* 1985 OK CR 57, ¶ 6, 701 P.2d 1039, 1040 (Death penalty upheld where "[d]efendant . . . contemplated that a killing was not only possible, but probable and further that lethal force [would] probably be employed.")

Wilson, 983 P.2d at 465. Because Tenth Circuit case law is unclear whether a sufficiency of the

evidence claim presents a question of law reviewable under § 2254(d)(1) or a question of fact

reviewable under § 2254(d)(2), this Court will consider whether the OCCA's determination was

contrary to clearly established federal law or based upon an unreasonable determination of the facts.

See e.g. Boltz v. Mullin, 415 F.3d 1215, 1230 (10th Cir. 2005); Turrentine v. Mullin, 390 F.3d 1181,

1197 (10th Cir. 2004).

In Tison v. Arizona, 481 U.S. 137 (1987), the defendants were convicted of felony-murder.

There was no evidence the Tison brothers took any act intended to kill.  The issue, therefore, became

whether the Eighth Amendment prohibited a death sentence where the defendants' participation,

combined with a reckless indifference to human life, was sufficient to satisfy the culpability

45

requirements of Enmund v. Florida, 458 U.S. 782 (1982).[14]   Unlike Enmund, the defendants'

personal involvement, in Tison, was, however, described by the Court as substantial.  The Court held

that:

> [T]he reckless disregard for human life implicit in knowingly
> engaging in criminal activities known to carry a grave risk of death
> represents a highly culpable mental state, a mental state that may be
> taken into account in making a capital sentencing judgment when that
> conduct causes its natural, though also not inevitable, lethal result.

Tison v. Arizona, 481 U.S. 137, 157-58 (1986). As in Tison, Petitioner was, at the least, actively

involved in the underlying felony of robbery. He helped subdue Yost, and was physically present

during the entire sequence of criminal activity culminating in the murder of Yost and the subsequent

flight by Petitioner and his co-defendants. It is clear to this Court that the Enmund/Tison culpability

requirement was satisfied.

After a careful review of the record herein, this Court finds the adjudication of this claim by

the Oklahoma Court of Criminal Appeals was not contrary to, nor did it involve an unreasonable

application of,  clearly established Federal law, as determined by the United States Supreme Court.

28 U.S.C. § 2254(d)(1).  Further, this Court concludes the evidence relied upon by the OCCA was

sufficient to support application of the HAC aggravator to Petitioner. Accordingly, the adjudication

of this claim did not involve an unreasonable determination of the facts in light of the evidence

---

[14] In Enmund, the defendant was convicted of felony-murder (the unlawful killing
occurring during the perpetration of or in the attempted perpetration of robbery).  The sole issue
decided by the Court was whether death is a valid penalty under the Eighth and Fourteenth
Amendments for one who neither took life, attempted to take life, nor intended to take life.  Id. at
787. Enmund was the driver of the getaway car for two others who killed an elderly man and his
wife. The United States Supreme Court found that the imposition of the death penalty where "the
record supported no more than the inference that Enmund was the person in the car by the side of
the road at the time of the killings, waiting to help the robbers escape" was inconsistent with the
Eighth and Fourteenth Amendments. Id.

presented at trial.  28 U.S.C. § 2254(d)(2).  Petitioner is not entitled to relief on this claim.

*C. Constitutionality of HAC Aggravator*

In his fifteenth claim Petitioner challenges the constitutionality of the heinous, atrocious or cruel aggravator found in Okla. Stat. tit. 21, § 701.12(4) as failing to legitimately narrow the class of defendants eligible for the death penalty. Petitioner argues that the HAC aggravator, as applied in Oklahoma and defined in the instructions to his jury, is unconstitutionally vague and can be applied in any murder case (Dkt. # 16 at 156-7).  Respondent counters that the heinous, atrocious or cruel definition has been adequately narrowed to comply with constitutional standards, and Petitioner's claim is without merit.

On direct appeal Petitioner questioned the constitutionality of the HAC aggravating circumstance applied in his case. The OCCA denied relief, stating:

> In proposition sixteen Wilson claims that the especially heinous, atrocious or cruel aggravator does not perform the constitutionally required narrowing process. The "heinous, atrocious or cruel" aggravator has been analyzed thoroughly and, when properly limited by the conditions precedent of torture or serious physical abuse, is consistent with the mandates of the Eighth and Fourteenth Amendments. *Toles v. State*, 1997 OK CR 45,¶ 59, 947 P.2d 180, 192, *cert denied*, 524 U.S. 958, 118 S.Ct. 2380, 141 L.Ed.2d 746 (1998). We decline the invitation to deviate from our previous holdings.

Wilson, 983 P.2d at 465 (Okla. Crim. App. 1999).

Because the constitutionality of aggravating factors is a question of law, Petitioner must demonstrate that the OCCA's decision was contrary to, or involved an unreasonable application of, federal law as established by the United States Supreme Court. See United States v. McCullah, 76 F.3d 1087, 1107 (10th Cir. 1996), and 28 U.S.C. § 2254(d)(1). Petitioner has failed to meet this burden. The Tenth Circuit summarized its position on the constitutionality of Oklahoma's heinous,

atrocious or cruel aggravator in <u>Workman v. Mullin</u>, 342 F.3d 1100, 1115-16 (10th Cir. 2003),

stating:

> We have repeatedly held that Oklahoma's current definition of "especially heinous, atrocious or cruel" aggravating circumstance is not unconstitutionally vague.
>
> Workman acknowledges that the Tenth Circuit has routinely upheld the constitutionality of this aggravating circumstance, <u>see</u>, <u>e.g.</u>, <u>Romano v. Gibson</u>, 239 F.3d 1156, 1176 (10th Cir. 2001); <u>Thomas v. Gibson</u>, 218 F.3d 1213, 1226 (10th Cir. 2000); <u>Medlock v. Ward</u>, 200 F.3d 1314, 1319 (10th Cir. 2000); <u>Moore v. Gibson</u>, 195 F.3d 1152, 1175-76 (10th Cir. 1999); <u>Smallwood v. Gibson</u>, 191 F.3d 1257, 1274 (10th Cir. 1999); <u>Hooks v. Ward</u>, 184 F.3d 1206, 1239-40 (10th Cir. 1999); <u>Foster v. Ward</u>, 182 F.3d 1177, 1194 (10th Cir. 1999); <u>Duvall v. Reynolds</u>, 139 F.3d 768, 793 (10th Cir. 1998). Nevertheless, Workman attempts to find room for his argument that the aggravating circumstance is unconstitutionally vague in snippets of language from our cases such as a line from <u>Thomas</u> expressing doubt about blanket application of Oklahoma's early formulation and Judge Lucero's concurrence in <u>Medlock</u>. <u>See</u> <u>generally</u> <u>Thomas</u>, 218 F.3d at 1229 n. 17 ("There exists, at a minimum, a serious constitutional question as to whether an aggravator which makes eligible for the death penalty all murderers who strike more than one blow adequately narrows the class of murderers eligible for the death penalty."); <u>Medlock</u>, 200 F.3d at 1324 ("There must be conscious suffering of more than the brief duration necessarily accompanying virtually all murders. Were this not so, the narrowing construction [that Oklahoma has given the aggravating circumstance] would not have the discretion-limiting effect required by [the Eighth Amendment].")(Lucero, J., concurring).
>
> Oklahoma, however, has limited application of the aggravating circumstance to only those crimes where the death of the victim was preceded by torture of the victim or serious physical abuse. <u>Stouffer v. State</u>, 742 P.2d 562, 563 (Okla. Crim. App. 1987). This limitation was included in the jury instructions in Workman's case. ROA Criminal Appeal, Original Record at 98, Instruction No. 3   penalty phase ("The phrase 'especially heinous, atrocious, or cruel' is directed to those crimes where the death of the victim was preceded by torture of the victim or serious physical abuse."). We have specifically found Oklahoma's new formulation to be constitutional since this limiting language was enacted. <u>Hatch v. State</u>, 58 F.3d 1447, 1468-69 (10th Cir. 1995); <u>see</u> <u>also</u> <u>Duvall</u>, 139 F.3d at 793.

48

Workman, 342 F.3d at 1115-16. Tenth Circuit precedent forecloses Petitioner's argument that Oklahoma's heinous, atrocious or cruel aggravator is unconstitutionally vague. The instruction defining the HAC aggravator in Petitioner's jury trial is identical to the language in the jury instructions in Workman's case. Compare id. at 1116 with O.R. Vol. II at 370. Habeas relief is denied on this issue.

## X.   Irrelevant, cumulative and prejudicial evidence (Claim 10)

In his tenth claim, Petitioner asserts that his constitutional rights guaranteed by the Eighth and Fourteenth Amendments were violated because much of the evidence introduced during both stages of his trial was irrelevant, cumulative or prejudicial. As he did on direct appeal,[15] Petitioner claims error based on the introduction of twenty-eight of the State's trial exhibits. See Dkt. # 16 at 116-22. The OCCA methodically discussed each questioned exhibit and rejected Petitioner's claims of error, with the exception of the introduction of Exhibit 115. Wilson, 983 P.2d at 467-69. The OCCA found the introduction of Exhibit 115 was error, but harmless error. Id. at 469. Respondent contends that Petitioner has not met his burden of proof on this issue to show that his trial was fundamentally unfair, and he is not entitled to habeas relief under § 2254(d).

"As a general matter, federal habeas corpus relief does not lie to review state law questions about the admissibility of evidence, *see* Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), and federal courts may not interfere with state evidentiary rulings unless the rulings in question rendered 'the trial so fundamentally unfair as to constitute a denial of federal

---

[15] The Court notes that the copy of Petitioner's direct appeal brief provided for review has two missing pages (pages 69-70) in which some of the exhibits supporting this claim were detailed for the OCCA. It is clear, however, from the OCCA's direct appeal opinion that Petitioner's objections to trial exhibits contained in the tenth claim of this habeas corpus action were all presented to the OCCA on direct appeal. See Wilson , 983 P.2d at 467-69.

constitutional rights,' <u>Tucker v. Makowski</u>, 883 F.2d 877, 881 (10th Cir. 1998)." <u>Moore v. Marr</u>, 254 F.3d 1235, 1246 (10th Cir. 2001). The question presented in this habeas proceeding is whether the admission of the challenged evidence, considered in light of the entire record, resulted in a fundamentally unfair trial.  The "Due Process Clause of the Fourteenth Amendment provides a mechanism for relief" when "evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair. . . ." <u>Payne v. Tennessee</u>, 501 U.S. 808, 825 (1991) (citing <u>Darden v. Wainwright</u>, 477 U.S. 168, 179-83 (1986)).

*A. Admission of exhibits*

With the exception of the State's trial exhibit # 115, the OCCA determined that the evidence items complained of by Petitioner were properly admitted. <u>Wilson</u>, 983 P.2d at 467-69. The OCCA found that photographs identified as State's exhibits 19, 20 and 113, depicting the wounds of the victim, "were relevant to show the cause of death and the intent of the attacker." <u>Id.</u> at 468. The OCCA rejected Petitioner's arguments concerning cumulative exhibits admitted during both first and second stage proceedings because they "were introduced for different purposes." <u>Id.</u> The OCCA also found that the diagrams and photographs of the scene were relevant to prove the aggravating circumstances and were not needlessly cumulative. <u>Id.</u> The OCCA found that the introduction of money taken from the co-defendants was "relevant to show they were acting together in the robbery." <u>Id.</u> The photos of the victim's injuries during second stage were deemed necessary "to show the victim was trying to defend himself" and "was conscious during the attack." <u>Id.</u> The OCCA found the admission of photos of two Sprite cartons and blood spatters found on boxes and the victim's body was "relevant to show the victim may have been standing or kneeling when he was struck." <u>Id.</u> at 469. Last, the OCCA found that the introduction of evidence concerning firearms was relevant to

prove the continuing threat aggravator. Id.

Based upon a careful review of the trial transcript and the evidentiary items referenced by Petitioner in this claim, the Court finds that Petitioner's trial was not rendered fundamentally unfair by the introduction of this evidence. The OCCA's decision was not contrary to clearly established federal law, nor was it based upon an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

*B. Photograph of interior of victim's skull*

The OCCA found error in the introduction of one photograph which showed the interior of Yost's skull (State's trial exhibit # 115). Finding that the exhibit # 115 photo had little relevance to second stage issues and its probative value was substantially outweighed by the danger of unfair prejudice, the OCCA held the admission of the photograph to be error. Wilson, 983 P.2d at 469. Further analyzing the impact of the photograph by comparing it to other properly admitted, but gruesome, photographs the OCCA determined the error was harmless. Id. This Court agrees with the OCCA and fails to see the relevance of the photograph for second stage purposes. It is a post-autopsy photograph of the interior of the victim's skull. However, the Court also agrees that it is no more shocking or gruesome than the multiple photographs which were properly admitted showing the crime scene and the damage done to the victim's body by the murder weapon, a baseball bat. Accordingly, upon review of the totality of the circumstances surrounding the admission of the photograph and the substantial amount of properly admitted evidence supporting the aggravating circumstances, this Court does not find that the admission of the photograph in question denied Petitioner the fundamental fairness to which he is entitled under the Constitution. See, e.g., Darden v. Wainwright, 477 U.S. 168, 181 (1986). Petitioner is not entitled to habeas corpus relief on his tenth claim.

## XI.    Prosecutorial misconduct (Claim 11)

In his next proposition of error, Petitioner claims that prosecutorial misconduct deprived him of a fundamentally fair trial in violation of the Eighth and Fourteenth Amendments. Respondent responds that the OCCA considered Petitioner's prosecutorial misconduct claims and correctly determined that Petitioner was not denied a fair trial or due process. The state appellate court found none of the alleged instances of misconduct, either individually or collectively, warranted relief. The Supreme Court has prescribed rules that govern Petitioner's prosecutorial misconduct claims. Therefore, this Court must determine whether the OCCA's decision on these claims is contrary to such rules. 28 U.S.C. § 2254(d)(1).

"In a habeas corpus action, claims of prosecutorial misconduct are reviewed only for a violation of due process." Malicoat v. Mullin, 426 F.3d 1241, 1255 (10th Cir. 2005) (citing Darden v. Wainwright, 477 U.S. 158, 181 (1974)). Not every improper and unfair remark made by a prosecutor will amount to a federal constitutional deprivation.  See Caldwell v. Mississippi, 472 U.S. 320, 338 (1985) (plurality opinion). When a prosecutor's comment or argument deprives Petitioner of a specific constitutional right, a habeas claim may be established without requiring proof that the entire trial was thereby rendered fundamentally unfair.  Mahorney v. Wallman, 917 F.2d 469, 472 (10th Cir. 1990) (citing Donnelly v. DeChristoforo, 416 U.S. 637, 643(1974)). A prosecutor's improper comment or argument which does not deprive a defendant of a specific constitutional right will require the reversal of a state conviction only where those remarks sufficiently infect the trial so as to make it fundamentally unfair and, therefore, a denial of due process. Donnelly, 416 U.S. at 643, 645; see also Trice v. Ward, 196 F.3d 1151, 1167 (10th Cir. 1999); Hoxsie v. Kerby, 108 F.3d 1239, 1243 (10th Cir. 1997). Federal law clearly provides that in order to constitute a due process violation

52

the prosecutorial conduct must be of sufficient significance to result in the denial of a defendant's right to a fair trial. <u>Donnelly</u>, 416 U.S. at 645.

This Court's inquiry into the fundamental fairness of a trial can only be made after examining the entire proceeding. <u>Donnelly</u>, 416 U.S. at 643. The complained of remarks or arguments must be considered in the context in which they were made. <u>Greer v. Miller</u>, 483 U.S. 756, 765-66 (1987); <u>see also</u> <u>Darden v. Wainwright</u>, 477 U.S. 168, 179 (1986).

> To view the prosecutor's statements in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly "could have tipped the scales in favor of the prosecution." . . . We also ascertain whether curative instructions by the trial judge, if given, might have mitigated the effect on the jury of the improper statements. . . . Ultimately, we "must consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly."

<u>Fero v. Kerby</u>, 39 F.3d 1462, 1474 (10th Cir. 1994) (citations omitted). In addition, the Court must consider the prejudice, if any, attributable to the prosecutor's comments. <u>Brecheen v. Reynolds</u>, 41 F.3d 1343, 1355 (10th Cir. 1994) (citing <u>Mahorney</u>, 917 F.2d at 472-73). Petitioner does not claim denial of a specific provision of the Bill of Rights, but rather a deprivation of his due process rights. The individual instances of misconduct alleged by Petitioner are examined below.

### A. Misstatement of facts

Petitioner argues that, during first stage closing arguments, the prosecutor made a statement that was not in evidence when he said that police sergeant Wayne Allen testified about rolls of QuikTrip money found in Petitioner's car. (Tr. Trans. 2/14/1997 at 14-15). The OCCA agreed that this was a misstatement of fact by the prosecutor. However, because the statement made by the prosecutor

was not objected to during trial it was waived except for plain error.[16] The OCCA found no plain error. Wilson, 983 P.2d at 469. After a careful review of the totality of the circumstances of the trial, the Court does not find the statement of the prosecutor so prejudiced the jury against Petitioner as to deny him the fundamental fairness to which he is entitled under the Constitution. See Brecheen v. Reynolds, 41 F.3d 1343, 1356 (10th Cir. 1994).

Petitioner next argues that the prosecutor misstated Petitioner's own statements about the planning of the crime. The OCCA found no error, stating:

> Next, Wilson complains that the prosecutor quoted him as saying "yeah, we were going to kill him" and that they decided to kill him two weeks before. Wilson's recorded statement is not that clear of an admission. However, Folks testified that Wilson admitted to talking about robbing the QuikTrip some two weeks prior and that Wilson said that "we planned on killing him." On cross-examination, Folks said that this probably occurred during an unrecorded conversation because it was not on the tape recorded interview. The statements of the prosecutor regarding this testimony was an accurate review of Folks' testimony; therefore, there was no error here.

Wilson, 983 P.2d at 469. This Court agrees that the prosecutor's comments, when considered in the context in which they were made, were not constitutionally defective. The comments did not violate the dictates of Donnelly to render the trial fundamentally unfair.

### B. Unnecessary ridicule of Petitioner

Petitioner next contends that the prosecutor engaged in unnecessary ridicule by calling him a psychopath during closing arguments. He also objects to the prosecutor's statement that, "[t]he evidence in this case shows that he's no better than an animal." Tr. Trans. 2/20/1997 at 29. The OCCA

---

[16] "Oklahoma's plain-error test is rooted in due process." Thornburg v. Mullin, 422 F.3d 1113, 1124 (10th Cir. 2005). Under Oklahoma law, "Error which impinges on the fundamental fairness of trial is plain error." Id. at 1125. Accordingly, the Tenth Circuit has advised that there is no practical distinction between the Oklahoma formulations of plain error and the federal due process test established in Estelle v. McGuire, 502 U.S. 62, 75 (1991). Id.

did not find that the comments rose to the level of plain error, but observed that the State "should refrain from unwarranted personal criticism or name calling." Wilson, 983 P.2d at 470. Petitioner has provided no federal authority for his claim these statements deprived him of a fundamentally fair trial. The Court has reviewed the trial transcript and does not find any support for this contention.

### C. Attacks on defense counsel

Petitioner next complains that, during *voir dire*, the prosecutor's warning to a potential jury to avoid a smoke screen were improper attacks on defense counsel. Defense counsel objected to the "smoke screen" reference. Tr. Trans. 2/5/1997 at 133-34. The trial judge sustained the objection and admonished the venire to disregard the statement. Id. at 134. Petitioner provided no federal authority to support his claim of a due process violation as a result of the prosecutor's statement. The OCCA found the comments were not attacks on defense counsel but simply remarks to the jury "to use common sense to evaluate evidence and not be fooled by irrelevant information." Wilson, 983 P.2d at 470. This Court agrees.

### D. Personalizing the victim

Petitioner complains the prosecutor improperly invited the jury to place themselves in the place of the victim. In second stage closing, the prosecutor argued for the jury to determine the existence of the HAC aggravating circumstance, stating, "You put yourselves in the victim's shoes." Tr. Trans. 2/20/1997 at 30. The prosecutor also argued that Mr. Yost "did not have a chance to tell his wife and children goodbye because he did not know he was going to die." Id. He further argued that Yost only had "two minutes and eleven seconds warning" to prepare himself to die (id.), and feigned regret that Petitioner's mother had to wait twenty minutes to see him in jail while the victim's mother would have to wait the rest of her life. Id. at 49. Petitioner asserts that these examples represent attempts by the

prosecutor to unlawfully "pervade the proceedings with sympathy for the victim." Dkt. # 16 at 131.

Petitioner did not object to the referenced statements at trial, nor does he provide any federal law in support of his habeas claim that they violated his due process rights to a fair trial. The prosecutor's argument was permissible comment on the existence of an applicable aggravating factor. See Coleman v. Brown, 802 F.2d 1227, 1239 (10th Cir. 1986). It did not, in light of all the evidence presented, render Petitioner's trial fundamentally unfair.

### E. Comments to jury about duty

Petitioner complains that the prosecutor's final remarks in first stage closing arguments were improper.  The following comments are at issue:

> Richard Yost, on the 26th day of February, 1995, was confronted with the fight of his life, and he lost. Sad, but true, he lost. He didn't have a choice. He had a judge, a jury, and executioner all in one. In the form of four individuals and a baseball bat. Now, it's your turn and you have a choice. You can deal with him accordingly. Find him guilty on Count 1, Murder in the 1st Degree and find him guilty on Count 2, Robbery with a Dangerous Weapon.

Tr. Trans. 2/14/1997 at 19-20.  Petitioner's counsel objected to the remarks and unsuccessfully sought a mistrial because of the comments. Id. at 20. Petitioner also objected to the prosecution's remark that the jury process is "the great equalizer" because "what was so unfair that night is now equalized." Id. at 37. The trial judge overruled the objection. Id. at 38. The OCCA found the comments to be harmless because of the overwhelming evidence of guilt. Wilson, 983 P.2d at 471. Petitioner has not convinced the Court that the comments rendered his trial fundamentally unfair.

### F. Misstatements of Law

In his final complaint concerning prosecutorial misconduct, Petitioner alleges the prosecutor misstated the law during *voir dire* when he commented that the jury would be recommending a sentence. Tr. Trans. 2/4/1997 at 84-5. He also contends the prosecutor misstated the law regarding the

56

definition of principals to a crime. Id. at 54, 164-65, 244. Finally, he asserts the prosecutor incorrectly argued the law during second stage closing arguments when he stated that the jury was required to reach a decision. Tr. Trans. 2/20/1997 at 19. The OCCA found that the comments were cured by a contemporaneous objection which was sustained, or that they "did not rise to the level of plain error." Wilson, 983 P.2d at 471. Petitioner advises this Court that the OCCA's decision "was based on an unreasonable application of federal law." He fails, however, to support this statement with argument or authorities which indicate how federal law has been applied unreasonably. This Court finds that the comments did not render Petitioner's trial fundamentally unfair.

### G. Conclusion

The OCCA examined each of these alleged improper statements and found none of them had a substantial impact on Petitioner's judgment or sentence. This Court will not question a state court's evidentiary rulings unless Petitioner has shown the rulings as a whole rendered his trial fundamentally unfair. Petitioner has failed to demonstrate the prosecutor's comments rendered his trial so fundamentally unfair as to deny him due process. The OCCA's rulings on these various instances of alleged prosecutorial misconduct were not an unreasonable application of federal law.

### XII.   Jury Selection (Claim 12)

In his  twelfth claim, Petitioner attacks the constitutionality of the trial court's *voir dire* process. He asserts that the trial judge improperly began his death qualifying questions by asking prospective jurors to state their views on capital punishment. Petitioner also complains that the trial court erred in denying Petitioner's request for individual *voir dire*. Petitioner's claims regarding the jury selection process were presented to, and rejected by, the OCCA. Respondent contends that the decision of the OCCA was a reasonable application of clearly established federal law as determined

by the Supreme Court.

### A. Voir dire questioning by trial court

In considering Petitioner's objection to the manner in which the trial court questioned prospective jurors about their capital punishment views, the OCCA stated:

> The trial court first began the death qualification portion of voir dire by asking individual jurors their view on the death penalty. Follow up questions were then asked based on the jurors' response to the initial question. Wilson claims the trial court erred by asking jurors their views on the death penalty because jurors opposed to the death penalty were removed from the jury panel.
> . . .
> We find that what Wilson is complaining about is the order in which the trial court asked voir dire questions regarding the death penalty. The better approach is to use the voir dire questions and order set forth in OUJI-CR 2d, 1-5 (1996). However, we find that the manner in which the trial court conducted voir dire in this case was not error. There is nothing to indicate that the jury was bent on delivering the death penalty nor is there anything to indicate that otherwise qualified jurors, who could put personal feelings aside, were excluded.
>
> The trial court's follow-up questions were designed to determine whether the jurors' personal views on the death penalty would impair their ability to render an impartial verdict. Of the five jurors which Wilson complains about, three were excused because they were against the death penalty and said that they would automatically vote against it, regardless of the evidence and the law; one said he was in favor of the death penalty, but his conscience would not allow him to impose it; and one said she was in favor of the death penalty but, her religious convictions would not allow her to impose it. Likewise, the trial court excused potential jurors who would automatically impose the death penalty regardless of the law and evidence. The trial court did not show partiality to one view or the other.

Wilson, 983 P.2d at 458-59.   Although Petitioner provides no detailed argument regarding the questioning of the five prospective jurors about which he complains, the Court has reviewed the transcript of the *voir dire* proceedings to ascertain whether the prospective jurors were improperly questioned and excused. In support of his claim, Petitioner cites Wainwright v. Witt, 469 U.S. 412 (1985). See Dkt. # 16 at 141. As noted by the OCCA, three of the prospective jurors advised the trial judge that they were opposed to capital punishment when asked if they were opposed or in favor of

58

the death penalty. See Tr. Trans. 2/3/1997 at 48 (Mr. Wilson); Tr. Trans. 2/5/1997 at 119 (Mr.

Thompson); Tr. Trans. 2/5/1997 at 129-30 (Mr. Paschal). The trial judge then asked each of them if

their opposition to the death penalty would cause them to automatically vote against the death penalty,

regardless of the evidence and the law. Mr. Wilson, Mr. Thompson, and Mr. Paschal answered in the

affirmative and the trial judge excused each of them for cause. Id.

In Witherspoon v. Illinois, 391 U.S. 510 (1968), the United States Supreme Court held a

sentence of death cannot be upheld if the jury that imposed or recommended it was chosen by

excluding for cause all veniremen who voiced general objections to the death penalty or expressed

conscientious or religious scruples against its infliction. In Adams v. Texas, 448 U.S. 38, 45 (1980),

the Court held that "a juror may not be challenged for cause based on his views about capital

punishment unless those views would prevent or substantially impair the performance of his duties

as a juror in accordance with his instructions and his oath." In Wainwright v. Witt, 469 U.S. 412, 420

(1985), the Court held the Adams standard was the appropriate standard for dealing with issues

regarding allegations of improper exclusion of jurors in violation of Witherspoon. Additionally, a trial

judge's decision regarding a potential juror's bias is a factual finding entitled to a presumption of

correctness under 28 U.S.C. § 2254(e)(1) and Petitioner has "the burden of rebutting the presumption

of correctness by clear and convincing evidence." Davis v. Executive Dir. of Dep't of Corr., 100 F.3d

750, 777 (10th Cir. 1996); see also Castro v. Ward, 138 F.3d 810, 824 (10th Cir. 1998); Cannon v.

Gibson, 259 F.3d 1253, 1279 (10th Cir. 2001). Since issues of credibility and demeanor are critical

to a judge's decision, review of such decisions is "quite deferential." Davis, 100 F.3d at 777; see also

United States v. Tipton, 90 F.3d 861, 880 (4th Cir. 1996). "Deference is necessary because a

reviewing court, which analyzes only the transcripts from *voir dire*, is not as well positioned as the

59

trial court to make credibility determinations." Miller-El v. Cockrell, 537 U.S. 322, 339 (2003). This

Court finds that Mr. Wilson, Mr. Thompson and Mr. Paschal were not improperly questioned and

excused. Rather, the Court finds ample support for the trial court's decision that the views of these

three potential jurors were so strong that they would not be able to perform their duties as jurors in

accordance with the instructions and their oath.  See Wainwright v. Witt, 469 U.S. 412, 433 (1985)

(quoting Adams v. Texas, 448 U.S. 38, 45 (1980)). "Under this standard, it is clear from Witt and

Adams, the progeny of Witherspoon that a juror who in no case would vote for capital punishment,

regardless of his or her instructions, is not an impartial juror and must be removed for cause." Morgan

v. Illinois, 504 U.S. 719, 728 (1992). Thus, each of these prospective jurors was properly excused for

cause.

Another venireman initially stated that he was opposed to the death penalty. After further

questioning Mr. Abell stated that he was in favor of the death penalty but could not impose it because

he did not want it "on [his] conscience." Tr. Trans. 2/4/1997 at 27-29 (Mr. Abell). He advised the

Court that he would automatically vote against the death penalty (id. at 29) and was excused for cause.

A fifth prospective juror indicated that she was in favor of the death penalty but could not impose it

because of her religious beliefs. Tr. Trans. 2/ 5/1997 at 71-73 (Ms. Kanne). She also advised the Court

that she would automatically vote against the death penalty in second stage proceedings, and the trial

court excused Ms. Kanne for cause. Id. at 73. This Court finds ample support for the trial court's

decision to excuse both Mr. Abell and Ms. Kanne.

The trial court retains great latitude in conducting *voir dire* in areas that might tend to show

juror bias. See Mu'Min v. Virginia, 500 U.S. 415, 427 (1991). A defendant's constitutional right to

an impartial jury, however, includes the right to an adequate *voir dire* to identify unqualified or biased

60

jurors. <u>Morgan v. Illinois</u>, 504 U.S. 719, 727 (1992). In this case the trial court's questions were designed to identify prospective jurors whose personal views on capital punishment might prevent them from considering all possible punishments allowed under Oklahoma law. A review of the record persuades this Court to find these five prospective jurors were properly excused for cause. The trial judge was face to face with each of them and a trial judge's "power of observation often proves the most accurate method of ascertaining the truth." <u>Wainwright</u>, 469 U.S. at 434. Petitioner offers no evidence to rebut the factual determinations of the trial court regarding the bias of these five veniremen against the imposition of the death penalty. This Court finds that the OCCA's determination that the trial court did not abuse its discretion in asking jurors about their views on capital punishment was not contrary to or an unreasonable application of Supreme Court precedent.

## B. Individual voir dire

Petitioner next argues that the trial court's refusal to grant individual *voir dire* of prospective jurors violated his constitutional rights. It is not clear whether Petitioner is challenging the exclusion of jurors who were "contaminated by the questioning" of others and lied to get off the jury, or if he is concerned with the effect that the questions in the death qualification process had on the jurors who ultimately found him guilty. <u>See</u> Dkt. # 16 at 143-45. In either event he has failed to demonstrate that he was denied his right to a fair and impartial jury.  On direct appeal, the OCCA rejected this claim, finding:

> Wilson next complains that the trial court did not conduct individual voir dire. He claims that the failure to do so educated jurors as to how they could be removed from jury service by expressing their desire to automatically vote one way or the other on the sentence of death. An appellant may request individual voir dire, but he has no automatic right to such a request. *Willingham v. State*, 1997 OK CR 62, ¶ 5, 947 P.2d 1074, 1078.

> There is no evidence that the potential jurors were anything but candid in their answers

to the trial court's questioning. Thus, the trial court did not abuse its discretion in failing to hold individual dire.

Wilson, 983 P.2d at 459. Based upon a review of the proceedings, this Court finds the *voir dire* was adequate to determine whether prospective jurors were qualified to serve. See Moore v. Gibson, 195 F.3d 1152, 1170 (10th Cir. 1999). Only those panel members who affirmatively answered that they would automatically vote against the death penalty, regardless of the evidence and the law, were excluded from the jury for cause. This comports with the standard enunciated in Witherspoon and Adams, and affirmed in Wainwright v. Witt, 469 U.S. 412, 424 (1985). The *voir dire* process implemented by the trial court in this case did not deny Petitioner his right to a fair and impartial jury and the trial court's exercise of its discretion to disallow individual *voir dire* did not render Petitioner's trial fundamentally unfair. Morgan, 504 U.S. at 730  n.5. Accordingly, this Court concludes the OCCA's determination was not contrary to or an unreasonable application of Supreme Court precedent.

## XIII.   Victim impact evidence improper (Claim 13)

In his thirteenth proposition of error, Petitioner claims that his rights guaranteed by the Eighth and Fourteenth Amendments were violated by the introduction of improper victim impact evidence during the second stage penalty phase of his trial. More specifically, he complains that the victim impact statements presented by the victim's wife and mother were unfairly prejudicial. He also claims that victim impact evidence in the Oklahoma sentencing scheme acts as an improper "super aggravator" and is unconstitutional.  The OCCA denied these claims of error on direct appeal. Wilson, 983 P.2d at 466-67.

### A.  Statements by Yost's wife and mother

The victim's wife, Angela Yost, and his mother, Alma Dorn, each read her prepared victim

impact statement into the record during the second stage penalty phase. <u>See</u> Tr. Trans. 2/18/1997 at 164-71. Petitioner asserts that the statements were unfairly prejudicial and exceeded the limitations established in <u>Cargle v. State</u>, 909 P.2d 806 (Okla. Crim App. 1995), and <u>Payne v. Tennessee</u>, 501 U.S. 808 (1991).

 Mrs. Yost read a short statement in which she described how her life had changed since her husband's murder, how she had enjoyed cooking and ironing for her husband and how much he enjoyed celebrating birthdays and holidays because he had not been able to do so during his childhood. Tr. Trans. 2/18/1997 at 164-68. In support of his claim that Mrs. Yost's statement was highly emotional and unduly prejudicial, Petitioner draws the Court's attention to the fact that his co-defendant's counsel made a record regarding a member of the Victim Witness Center who was crying in the courtroom.

 Petitioner also complains that the references in Ms. Dorn's statement to her son's childhood and his future plans to take care of her in her old age were unduly prejudicial. Tr. Trans. 2/18/1997 at 170-71. The OCCA found the statements of both Mrs. Yost and Ms. Dorn were relevant to show the impact of the murder on their lives, with the exception of the references to Mr. Yost's childhood. Noting that statements "about a victim's childhood have no relevance in victim impact evidence," the OCCA found such references constituted error but did not rise to the level of plain error. <u>Wilson</u>, 983 P.2d at 467.

 Petitioner has failed to demonstrate how the OCCA's decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. Federal habeas corpus review of the admission of victim impact evidence is limited to a determination whether the use of the victim statement made the sentencing hearing "so fundamentally unfair as to

deny him due process." <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 645 (1974); <u>Payne</u>, 501 U.S. at 825; <u>see</u> <u>also</u> <u>Welch v. Sirmons</u>, 451 F.3d 675, 703 (10th Cir. 2006). In reviewing the victim impact statements made by Angela Yost and Alma Dorn, this Court does not find the remarks so infected the sentencing proceeding as to render it fundamentally unfair. In light of the entire trial transcript, the error created by the two isolated childhood references was harmless. <u>Welch</u>, 451 F.3d at 704. With the exception of two short references to Mr. Yost's childhood, the statements were clearly within the boundaries of acceptable testimony established by <u>Payne</u>. The jury found the existence of three aggravating circumstances which were amply supported by the evidence. This Court concludes that the improper references in the victim impact evidence "did not play a substantial role in the jury's assessment of the death penalty in this case." <u>Id.</u>  The OCCA's decision was neither contrary to nor involved an unreasonable application of <u>Payne</u>.  Accordingly, habeas relief is denied on this issue.

*B. Constitutionality of victim impact evidence as applied in Oklahoma*

Petitioner next asserts that victim impact evidence in Oklahoma is not relevant to Oklahoma's death penalty scheme which requires a balancing test of aggravating and mitigating circumstances. (Dkt. #16 at 150). He claims it operates as an "irrelevant, improper, nonstatutory superaggravator" resulting in an unconstitutional skewing of the weighing process between aggravating and mitigating circumstances. <u>Id.</u>  This claim was raised on direct appeal. In rejecting Petitioner's arguments, the OCCA stated:

> Wilson finally complains that the victim impact evidence in this case served as nothing more than a "superaggravator." We have previously held that victim impact evidence is very different and serves a different purpose than aggravation evidence. *Willingham*, 947 P.2d at 1086. The State is still required to prove at least one aggravator beyond a reasonable doubt before the death penalty may be imposed. *Id.*
>
> In this case, the jury was specifically instructed that they could only

> consider the aggravating circumstances set forth in the instructions.
> Wilson has not convince us that the jury would not have found the
> aggravating circumstance but for the victim impact evidence. *Id.*

Wilson, 983 P.2d at 467.

If a state chooses to allow the admission of victim impact evidence, the Eighth Amendment

erects no *per se* bar. "A State may legitimately conclude that evidence about the victim and about the

impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the

death penalty should be imposed." Payne v. Tennessee, 501, U.S. 808, 827 (1991). In overruling its

own previous split decisions in Booth v. Maryland, 482 U.S. 496 (1987), and South Carolina v.

Gathers, 490 U.S. 805 (1989), the Supreme Court observed that, "assessment of the harm caused by

the defendant has long been an important factor in determining the appropriate punishment, and victim

impact evidence is simply another method of informing the sentencing authority about such harm."

Payne, 501 U.S. at 808. Noting that in most cases, "victim impact evidence serves entirely legitimate

purposes," the Payne Court concluded that such statements are "simply another form or method of

informing the sentencing authority about the specific harm caused by the crime in question, evidence

of a general type long considered by the sentencing authorities." Id. at 825.

In 1992, Oklahoma enacted legislation permitting victim impact evidence. See Okla. Stat. tit.

21, § 701.10 (c) (1992)[17] and Okla. Stat tit. 22, §§ 984, 984.1 (1992).[18] Petitioner does not challenge

---

[17] Section 701.10 (c) of Title 21 provides, "In the sentencing proceeding, . . .the state may introduce evidence about the victim and about the impact of the murder on the family of the victim."

[18] Section 984 of Title 22 in effect at the time of Petitioner's crime and trial defines "victim impact statements" as, " information about the financial, emotional, psychological, and physical effects of a violent crime on each victim and members of their immediate family, and includes information about the victim, circumstances surrounding the crime, the manner in which the crime was perpetrated, and the victim's opinion of a recommended sentence." Per

65

the constitutionality of the Oklahoma statutes or the admission of victim impact statements *per se*, but asserts that victim impact evidence "negates the narrowing function required under the Supreme Court jurisprudence and skews the results in Oklahoma's weighing process." (Dkt. #16 at 150).  The Court disagrees.

Petitioner's jury was fully instructed as to its duties for determining punishment in the second stage proceedings. (O.R. Vol. II at 363-82). In arriving at a determination of punishment the jury was instructed to first determine whether any one or more of the three aggravating circumstances existed beyond a reasonable doubt. (Instruction No. 5, O.R. Vol. II at 369). Jurors were advised they could "consider only those aggravating circumstances set forth in these instructions." (Instruction No. 9, O.R. Vol. II at 373). Only after unanimously finding that one or more of the aggravating circumstances existed beyond a reasonable doubt could the jury even consider imposing a death sentence. Id. The jury is presumed to follow its instructions. Weeks v. Angelone, 528 U.S. 225, 234 (2000) (citing Richardson v. Marsh, 481 U.S. 200 (1987)). Petitioner's assumption that his jury considered the victim impact evidence to be another aggravating circumstance ignores the plain language of the instructions given at trial, which the jury is presumed to follow. Petitioner's jury found the existence of all three aggravating circumstances beyond a reasonable doubt before recommending the death sentence for Petitioner.

Additionally, the Supreme Court has determined that aggravating circumstances give effect to constitutional protections by narrowing the class of death eligible murders, and the introduction of victim impact evidence does not eliminate that effect. Tuilaepa v. California, 512 U.S. 967, 979-80 (1994). "[T]he sentencer may be given unbridled discretion in determining whether the death penalty

section 984.1, copies of the victim impact statement are to be made available to the parties.

should be imposed after it has found that the defendant is a member of the class made eligible for that penalty." Id. (internal quotations omitted). "A capital sentencer need not be instructed how to weigh any particular fact in the capital sentencing decision." Id. at 979. This Court finds that the use of victim impact evidence in general under Oklahoma law and specifically in Petitioner's trial did not deprive Petitioner of his Eighth or Fourteenth Amendment rights. The OCCA's decision on this issue in Wilson's direct appeal was not an unreasonable application of clearly established federal law as determined by the Supreme Court. Habeas relief is denied on this issue.

**XIV.   Ineffective assistance of counsel (Claims 14 and 22)**

As his fourteenth proposition of error, Petitioner asserts that he was denied effective assistance of trial counsel in violation of the Sixth Amendment because his trial counsel failed to fully investigate his mental health background. He provides further argument and details in his twenty-second claim asking for an evidentiary hearing on the issue.  Petitioner also asserts that his trial counsel was constitutionally deficient because he failed to properly preserve the record by making various objections.

It is well established that to prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-pronged standard enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  See Murray v. Carrier, 477 U.S. 478, 488-89 (1986); United States v. Cook, 45 F.3d 388, 394-95 (10th Cir. 1995).  The Strickland test requires a showing of both deficient performance by counsel and prejudice to Petitioner as a result of the deficient performance.  Strickland, 466 U.S. at 687.  To satisfy the deficient performance prong of the test, Petitioner must overcome a strong presumption that counsel's conduct fell within the "wide range of reasonable professional assistance [that] . . . might be considered sound trial strategy."  Brecheen v. Reynolds, 41 F.3d 1343, 1365 (10th Cir. 1994)

(citations omitted).  "A claim of ineffective assistance must be reviewed from the perspective of counsel at the time and therefore may not be predicated on the distorting effects of hindsight."  <u>Id.</u> (citations omitted).  Finally, the focus of the first prong is "not what is prudent or appropriate, but only what is constitutionally compelled."  <u>Id.</u>  To establish the prejudice prong of the test, Petitioner must show that the allegedly deficient performance prejudiced the defense, namely, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."  <u>Strickland</u>, 466 U.S. at 694.  Failure to establish either prong of the <u>Strickland</u> standard will result in denial of relief.  <u>Id.</u> at 696.

In the instant case, the OCCA applied the <u>Strickland</u> standard in evaluating Petitioner's claims of ineffective assistance of counsel on direct appeal and determined that Petitioner was not entitled to relief. <u>Wilson</u>, 983 P.2d at 471-72. Therefore, this Court may grant habeas relief only if Petitioner satisfies the § 2254(d) standard, <u>i.e.</u>, only if Petitioner demonstrates that the OCCA's resolution of the claims was an unreasonable application of <u>Strickland</u> to the facts of Petitioner's case.  28 U.S.C. § 2254(d).

### A. Failure to fully investigate mental health background

As to the failure to investigate fully Petitioner's mental health background or effectively assist Dr. Reynolds in preparation for his second stage testimony, this Court concludes that Petitioner has failed to establish that this evidence, if discovered by his counsel and presented to the jury, "might well have influenced the jury's appraisal of [his] culpability." <u>Rompilla v. Beard</u>, 545 U.S. 374, (citing <u>Wiggins v. Smith</u>, 539 U.S. 510 (2003)). The OCCA concluded that Petitioner did not establish ineffective assistance on this issue by finding:

> Wilson first asserts that his attorney failed to fully investigate his mental health background or effectively assist Dr. Reynolds in preparation for his second stage

68

testimony. Wilson has filed, contemporaneously with this issue, an application for an evidentiary hearing regarding ineffective assistance of counsel in an attempt to supplement the record with material not found in the record.

A review of the trial record shows trial counsel did put forth a mental health expert to rebut the State's continuing threat contention and to mitigate punishment. At trial, Dr. Reynolds testified that he examined Wilson on three separate occasions. He also met with Wilson's mother and was provided with Wilson's medical records, school records and statements from people who knew Wilson. Reynolds testified that Wilson had a severe personality disturbance. Reynolds explained that Wilson had some unusual, bizarre types of thinking that would suggest that he is not in touch with reality at times. Reynolds [sic] testimony indicated that Wilson committed this crime as an intelligent but immature person, and that, because of his family support and his intelligence, he had the capability of being rehabilitated. The mere fact more evidence could have been presented is not, in itself, sufficient to show counsel was deficient. *Douglas*, 951 P.2d at 680. Reynold's [sic] testimony was credible and well developed. We find Appellant has failed to carry his burden to show either deficient performance by counsel, or prejudice from the omission of this specific evidence.

<u>Wilson</u>, 983 P.2d at 472. The OCCA also denied Petitioner's application for an evidentiary hearing

on this claim. <u>Id.</u> at n.8. A careful reading of the trial transcript confirms that Petitioner's trial counsel

questioned Dr. Reynolds thoroughly during his second stage testimony. This Court finds nothing

deficient in the performance of trial counsel. Accordingly, the Court finds that the OCCA's rejection

of this claim on direct appeal was not an unreasonable application of the legal principle announced

by the Supreme Court in <u>Strickland</u> to the facts of Petitioner's case. Petitioner has failed to satisfy the

§ 2254(d) standard on this portion of his ineffective assistance of counsel claim.

### B.   Failure to make objections

Petitioner alleges that his trial counsel was ineffective for failing to make a variety of

objections during both phases of Petitioner's trial. Petitioner claims that his trial counsel should have:

(1) requested a <u>Daubert</u> hearing on the DNA evidence; (2) challenged Officer McCullough during his

testimony about the lack of a <u>Miranda</u> warning before Petitioner gave his February 16, 1995 statement

to police; (3) objected to Sergeant Huff's "evidentiary harpoon" testimony about the description of

Petitioner's vehicle; (4) objected to some of the prosecutor's questions during *voir dire*; (5) objected to the prosecutor's second stage closing argument when he advised the jury that they must reach a verdict; and (6) objected to the prosecutor's reference to Petitioner as a psychopath and an animal during second stage closing argument. The OCCA applied the <u>Strickland</u> standard and found that Petitioner was not prejudiced by any of these omissions by trial counsel because none of the underlying issues was found to have merit. <u>Wilson</u>, 983 P.2d at 472 ("counsel's failure to request a [<u>Daubert</u>] hearing did not alter the outcome of the trial"; "facts did not indicate that Wilson was in custody, therefore *Miranda* did not apply"; "introduction of [Sgt. Huff's] statement did not harm Wilson"; "the [prosecutor's] statements did not affect the outcome of this trial or render the trial fundamentally unfair or unreliable"). This Court agrees with the state appellate court that trial counsel's alleged failures did not prejudice Petitioner. This Court has also determined that none of the alleged deficiencies underlying Petitioner's claims of ineffectiveness rises to the level of a constitutional violation. Having found no error in the underlying claims, this Court determines that Petitioner was not prejudiced by his counsel's actions relating to those claims. Therefore, the OCCA's denial of this claim under <u>Strickland</u> standards was not contrary to clearly established federal law.

**XV.    Continuing threat aggravator (Claims 16 and 17)**

Petitioner asserts in his sixteenth claim that the application of the continuing threat aggravator in his case violated the Fifth, Eighth and Fourteenth Amendments. In his seventeenth claim, he asserts that the aggravator is unconstitutionally vague.

*A. Evidence for Continuing Threat Aggravator*

Petitioner claims there was insufficient evidence to support the jury's finding that there was a probability he would commit future criminal acts of violence as required for the continuing threat

70

aggravator under Oklahoma law.  See Okla. Stat. tit. 21, § 701.12(7);  Medlock v. State, 887 P.2d 1333, 1346 n.30 (Okla. Crim. App. 1994). The OCCA denied relief on the merits finding "the evidence that Wilson pled guilty to accessory after the fact to the crime of murder was relevant to show that he would pose a continuing threat to society." Wilson, 983 P.2d at 466. "In assessing sufficiency of the evidence, the relevant question is whether after viewing all of the evidence in the light most favorable to the State, a rational factfinder could have found the existence of the aggravating factor beyond a reasonable doubt." Lewis v. Jeffers, 497 U.S. 764, 780-82 (1990)(finding appropriate standard for analyzing due process claim in application of aggravating circumstance is the "rational factfinder" test established in Jackson v. Virginia, 443 U.S. 307 (1979)); Sallahdin v. Gibson, 275 F.3d 1211, 1231 (10th Cir. 2002). The OCCA determined there was sufficient evidence to support the continuing threat aggravator in Petitioner's trial.

Under Oklahoma law the continuing threat aggravator may be proved by prior convictions, unadjudicated crimes, or circumstances of the crime for which defendant is on trial. Rogers v. State, 890 P.2d 959, 976-77 (Okla. Crim App. 1995); Mitchell v. State, 884 P.2d 1186, 1208 (Okla. Crim. App 1994). As support for the aggravating circumstance of "continuing threat to society," the State presented evidence at trial of Petitioner's plea of guilty to accessory after the fact in the murder of Karen Summers (Tr. Trans. 2/18/1997 at 40-50, 54). Petitioner does not argue that the OCCA's determination of the facts supporting its conclusion is unreasonable. Therefore, the State appellate court's findings of fact are presumed correct. 28 U.S.C. § 2254(e)(1). Petitioner argues that the evidence was not admissible because it was not evidence of a violent crime and could not be used to support the continuing threat aggravator. However, in determining there was sufficient admissible evidence, the state appellate court did not rely solely on the earlier plea and conviction but also on the

71

basis for the prior conviction. "The basis for his conviction was that he held the gun used in a drive-by shooting for a person; however, the facts revealed that he may have been more involved in this drive-by shooting by providing ammunition for the gun on the day of the murder." Wilson, 983 P.2d at 466. A court may consider a defendant's past criminal behavior, even if no conviction resulted from that behavior. See Boltz v. Mullin, 415 F.3d 1215, 1230 (10th Cir. 2005).

After reviewing the evidence in the light most favorable to the State, this Court finds that any rational trier of fact could have found the continuing threat to society aggravating circumstance existed beyond a reasonable doubt. Jackson, 443 U.S. at 319. Therefore, the OCCA did not act contrary to Jackson or any other clearly established federal law in upholding the jury's finding of this aggravating circumstance. The state appellate court's determination that there was sufficient evidence to support this aggravating fact was not unreasonable under either 28 U.S.C. § 2254(d)(1) or (2).[19] Habeas relief is denied on this claim.

B. Constitutionality of Continuing Threat Aggravator

Petitioner also contends that Oklahoma's continuing threat aggravator (Okla. State., tit. 21, § 701.12) is "hopelessly vague." Petitioner's challenge must be rejected in light of several cases from the Tenth Circuit Court of Appeals. As acknowledged by Petitioner, Tenth Circuit precedent forecloses Petitioner's facial challenge to Oklahoma's continuing threat aggravator as unconstitutional. Sallahdin v. Gibson, 275 F.3d 1211, 1232 (10th Cir. 2002); see also Medlock v. Ward, 200 F.3d 1314, 1319 (10th Cir. 2000). Petitioner does not make any argument which compels or permits this Court to disregard

---

[19] Tenth Circuit case law remains unclear whether a sufficiency of the evidence claim presents a question of law that is reviewed under § 2254(d)(1) or a question of fact reviewable under§ 2254(d)(2). Boltz v. Mullin, 415 F.3d 1215, 1230 (10th Cir. 2005).

the binding precedent. Accordingly, habeas relief must be denied on this issue.

## XVI. Jury instruction on Mitigating evidence (Claim 18)

Petitioner argues in his eighteenth claim that his rights under the Eighth and Fourteenth Amendments to the U.S. Constitution were violated because the jury instructions diminished the importance of mitigation evidence (Dkt. # 16 at 163-64). He contends that the cumulative effect of the second stage instructions created doubt as to the jury's constitutional duty to consider the mitigating evidence. The OCCA found no error and observed that the standard Oklahoma Uniform Jury Instructions ("OUJI") were given which properly instructed the jury on the use of mitigating evidence. Wilson, 983 P.2d at 466. Petitioner asserts that the outcome of his sentencing "reasonably would have been different" (Dkt. # 16 at 164) if the jury had been instructed that it must consider mitigation with the same emphasis it placed on the aggravating circumstances. Petitioner's argument is unconvincing.

The appropriate inquiry is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." Boyde v. California, 494 U.S. 370, 380 (1990). Arguments similar to Petitioner's claim have been considered and rejected by the Tenth Circuit on more than one occasion. See Sallahdin v. Gibson, 275 F.3d 1211, 1232 (10th Cir. 2002); Fox v. Ward, 200 F.3d 1286, 1302 (10th Cir.2000). The Tenth Circuit Court of Appeals has determined there is no reasonable likelihood that a jury applied the challenged instructions in a way that prevented it from considering constitutionally relevant evidence, and the instructions "did not preclude any of the jurors from giving effect to all of the mitigating circumstances." Castro v. Ward, 138 F.3d 810, 824 (1998). Hence, the Court follows the precedent set by Tenth Circuit cases, and finds that Petitioner is not entitled to habeas relief on this ground.

## XVII.  Cumulative error (Claim 19)

Petitioner argues that the accumulation of all trial errors deprived him of his rights to due process and fundamental fairness, entitling him to relief. The OCCA rejected this claim on direct appeal. The Tenth Circuit Court of Appeals has repeatedly held that cumulative error analysis is applicable "only where there are two or more actual errors.". Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003); Fero v. Kerby, 39 F. 3d 1462, 1475 (10th Cir. 1994) (citing United States v. Rivera, 900 F.2d 1462, 1571 (10th Cir. 1990)). This Court has found errors in Petitioner's trial. The errors found by this Court, however, were harmless or non-prejudicial. The Court cannot find under the facts of this case that the cumulative effect of the errors found, combined with the effect of any additional errors which may have occurred, deprived Petitioner of a fair trial. See Newsted v. Gibson, 158 F.3d 1085 (10th Cir. 1998); Moore v. Reynolds, 153 F.3d 1086 (10th Cir. 1998); United States v.  McKneely. 69 F.3d 1067, 1080 (10th Cir. 1995). Having rejected each of Petitioner's habeas claims, and determined that Petitioner's rights were not substantially affected by any errors, the Court finds Petitioner has shown no cumulative error warranting a new trial. The OCCA's rejection of this claim was not contrary to or an unreasonable interpretation of clearly established Supreme Court precedent.  Pursuant to § 2254(d), habeas corpus relief on this claim should be denied.

## XVIII.  Oklahoma's clemency scheme denies due process (Claim 21)

In his twenty-first claim for habeas relief, Petitioner challenges the constitutionality of Oklahoma's clemency procedure. This claim was raised by Petitioner in his application for post-conviction relief and denied.[20] Respondent contends that this issue is not ripe for consideration as

---

[20] Following its precedent, the OCCA found that the "claim is not properly presented under the Post-Conviction Procedure Act." See "Opinion Denying Post-Conviction Relief" in OCCA Case No. PCD-98-1250.  Oklahoma's criminal appellate court has consistently found that a claim challenging Oklahoma's clemency scheme is properly presented after a clemency hearing. Sellers v. State, 973 P.2d 894, 896 (Okla. Crim. App. 1999).

Petitioner has not participated in clemency proceedings. Thus, Petitioner's speculation that his due process rights will be violated is not properly before this Court.

This claim fails for several reasons. First, Petitioner has yet to go through the clemency process, so his claim is not ripe for review. Second, even if it were ripe for review, this claim is not cognizable in a petition for writ of habeas corpus. See Herrera v. Collins, 506 U.S. 390, 414 (1993) ("[T]he Constitution . . . does not require the States to enact a clemency mechanism."); Connecticut Bd. of Pardons v. Dumschat, 452 U.S. 458, 464 (1982) ("[A]n inmate has 'no constitutional or inherent right' to commutation of his sentence.") (quoting Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7 (1979)). Finally, notwithstanding the jurisdictional bars to review, his claim is without merit. Although the Due Process Clause does apply to clemency proceedings, executive clemency remains a matter of grace, not right. Ohio Adult Parole Auth. v. Woodard, 523 U.S. 272, 273 (1998) (plurality opinion). The Tenth Circuit has determined that, "Because clemency proceedings involve acts of mercy that are not constitutionally required, the  minimal application of the Due Process Clause only ensures a death row prisoner that he or she will receive the clemency procedures explicitly set forth by state law, and that the procedure followed in rendering the clemency decision will not be wholly arbitrary, capricious or based upon whim, for example, flipping a coin." Duvall v. Keating, 162 F.3d 1058, 1061 (10th Cir. 1998) (citing Woodard, 523 U.S. at 289 (O'Connor, J., concurring)).

The Oklahoma constitution sets forth the procedure to be used by a prisoner seeking clemency. See Okla. Const. Const. art. VI, § 10.  Upon request, the Oklahoma Pardon and Parole Board conducts an impartial investigation and study of the application for clemency. The ultimate decision whether to grant clemency is vested in the Governor. The Governor can commute a death sentence only if the Pardon and Parole Board has issued a favorable recommendation by a majority vote. Id.  In this case,

Petitioner cannot show that he has suffered a due process violation unless and until he establishes that the Pardon and Parole Board fails to conduct an impartial investigation or that it utilizes procedures that are arbitrary, capricious or whimsical.  See <u>Duvall</u>, 162 F.3d at 1061-62. His concerns about the prospective general application of clemency are without merit. Likewise, Petitioner's assertion that Governor Keating would never grant clemency to a murderer (Dkt. # 16 at 175-76) is mere speculation and lends no support to Petitioner's position as Governor Keating is no longer the Governor of Oklahoma. Additionally, because this Court finds the claim meritless, Petitioner's structural error[21] and ineffective assistance of appellate counsel arguments, insofar as they relate to the clemency issue, are without merit. Petitioner's twenty-first claim is denied.

## XIX.   Evidentiary hearing requested (Claim 22)

In Petitioner's final claim, he asks for an evidentiary hearing on the issues of ineffective assistance of counsel and application of the heinous, atrocious or cruel aggravator. As the disposition of Petitioner's habeas corpus petition does not require reference to any materials beyond those that are available and currently before the Court, the Court finds that there is no need for an evidentiary hearing in this case. There are no disputed factual questions remaining that could possibly entitle Petitioner to habeas corpus relief. Petitioner has failed to demonstrate the need for an evidentiary hearing under either 28 U.S.C. § 2254(e)(2) or any other governing principle of law. <u>Michael Williams v. Taylor</u>, 529 U.S. 420 (2000). Accordingly, Petitioner's request for an evidentiary hearing is denied.

## <u>CONCLUSION</u>

---

[21] Petitioner acknowledges that his allegations of error in Oklahoma's clemency process are "still developing," but claims the error is properly raised prior to the actual clemency hearing because it is "so destructive to the process as to eliminate it entirely." (Dkt. # 16 at 180). The Court disagrees and finds that Petitioner's reliance on <u>Rogers v. United States</u>, 422 U.S. 35 (1975), is misplaced.

76

After a complete review of the transcripts, trial record, appellate record, briefs filed by the Petitioner and Respondent, and the applicable law, the Court finds Petitioner's request for relief in his petition for writ of habeas corpus by a person in state custody pursuant to 28 U.S.C. § 2254 (Dkt. #16) to be without merit. Accordingly, habeas relief on all grounds is denied.

**ACCORDINGLY IT IS HEREBY ORDERED THAT**:

1.  Marty Sirmons is substituted for Gary Gibson as the party Respondent and the **Court Clerk is directed** to note such substitution on the record.

2.  Petitioner's request for habeas relief (Dkt. #16) is **denied**.

DATED this 8th day of August, 2006.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT